# EDWARD CANNON

*v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Ottawa May 12, 1892.*

1. CRIMINAL LAW—*self-defense—means of determining the resistance necessary.* Where one is attacked by another in a manner and with a weapon evincing a purpose of taking life or to do great bodily harm, the person assaulted is required to judge and determine by the means within his knowledge, or such as are apparent, of the necessity of resorting to force in self-defense, and in determining the extent of force required to repel the assault.

2. Where a homicide is attempted to be justified on the ground of self-defense, it is highly important that the jury should be apprised of all the circumstances, real or apparent, surrounding the defendant at the time of the killing, from which he was called upon to determine the necessity of resorting to force in defense of his life or person. For this purpose the known character of the assailant for violence, etc., is proper evidence for the defendant.

3. After one being tried for murder has first shown by evidence from which the jury may, if they give it credence, find that the person killed was the assailant, the accused may prove that the deceased was a person of ferocity, brutality, vindictiveness and excessive strength, such evidence being offered for the purpose of showing that the defendant was acting in terror, or that he was acting in such apparent extremity as to make out a case of self-defense, or that the purpose of the deceased in encountering him was deadly.

4. SAME—*self-defense, where the defendant was the assailant.* But where the defendant is the assailant or commences the affray, he will not be entitled to show in defense the vicious or wicked disposition of the person he has slain. Having sought and brought on the affray, he can not shield himself from punishment by showing that he aroused the vicious or wicked passions of the person killed.

5. SAME—*evidence of the temper and disposition of the deceased where defendant is on trial for murder.* Where it is shown that the deceased made an assault upon the defendant, the temper and disposition of the former may be shown by the defendant,—and especially is this so when the assailant was a violent and dangerous man, and his disposition was at the time of the assault known to the accused.

6. SAME—*opinions of witnesses as to instrument producing a wound causing death.* On the trial of one for murder, by the infliction of a

wound, as claimed, with a pair of shears, a physician, who had assisted in making a *post mortem* examination of the body of the deceased, and who described the nature, character and extent of the wounds, was requested to examine a pair of shears, and asked to "tell the jury whether or not the wounds upon the body of the deceased were likely to have been produced with that instrument." He answered that the wounds could have been so produced: *Held*, that the question was improper, as invading the province of the jury, that being a question of fact, for the jury to determine from all the evidence, and that the inquiry was in no sense the proper subject of opinion by experts.

7. Whether a wound could have been produced by a particular weapon or in a particular way, judging from the nature, character and extent of the wound, is a question upon which a witness, if an expert, may be called upon to give an opinion, but not whether the particular weapon did likely produce the wound.

8. SAME—*evidence—leading questions—when without prejudice.* On the trial upon a charge of murder a witness was asked, "Was he (the deceased) killed in this county and State?" and he answered, "He was." The question was objected to as leading, and this was the only testimony of the venue: *Held*, that the question was objectionable, but as the evidence was upon a point practically conceded, and about which there could be no possible controversy, the leading form of the question was not prejudicial or substantial error.

9. SAME—*leading questions to prejudice of defendant.* On the trial of one for murder, in a case where the killing took place in a hall, in the night time, with no one present except the defendant and the deceased, a witness, after testifying that the defendant was in the hall at the time of or immediately after the killing, and his statements there, was asked, "When C. (the defendant) was in the hall and swearing, could you hear R. (the deceased) say anything on the inside?" He answered, "All I heard him say was, 'Keep still.'" Witness was then asked, "Did you hear him (R.) say 'Don't?'" He answered, "Yes, I heard that, too." The witness afterwards stated that all he heard R. say was "Keep still :" *Held*, that the manner of examination was highly objectionable, and that in a case involving life, the court should be careful in the admission of evidence, etc., so that nothing should occur to the prejudice of the accused.

10. SAME—*hearsay evidence.* The same witness was asked what he heard the defendant and the deceased say in the room, if anything, after they came back from town the last time. He answered, "I did not hear for a while anything said in the room. I dozed off to sleep. My boarders heard it,"—which was objected to: *Held*, that the latter part of this testimony was improperly admitted, its effect being to strengthen the testimony of others, who claimed to have heard what was said in the room, by mere hearsay evidence.

11. Same—*permitting officer to testify as to former arrests of defend-
·ant.* On the trial of one for murder a police officer was asked, "Why did
_you tell the defendant to go home and go to bed?" This was after the
killing, but on the same night, and at the time the accused offered to
surrender himself to the officer. The·witness answered, "Well, we often
had him under arrest before :" *Held,* that the admission of this evidence
·was manifest error, it having no tendency to show defendant's guilt of
the homicide, but its only effect was to prejudice the minds of the jury,
and lead them to increase the defendant's punishment in case of con-
·viction.

12. Instructions—*assuming matters to be proven.* On the trial of
·one for murder, in which he denies the killing by him, and also in-
troduces evidence tending to show he was acting in self-defense if
he did the killing, the court instructed ·the jury, that in considering
·whether the killing was in self-defense, they should consider all the
·circumstances attending the killing, the conduct of the parties at the
time and immediately prior thereto, and the degree of force used by
the prisoner in making what is claimed to be his self-defense, as bear-
ing upon the question as to whether the blows, cuts and wounds given
the deceased were actually given in self-defense, or whether they were
given in carrying out an unlawful purpose ; and that if they believed,
from the evidence, that the force used was unreasonable in amount
.and character, and such as a reasonable mind would have so considered
under the circumstances, it was proper for the jury to consider that fact
·in determining whether the killing was in self-defense or not : *Held,*
·that the instruction was erroneous, as assuming the killing of the de-
·ceased, and that the defendant gave the blows, cuts and wounds from
which death resulted.

13. Same—*not based upon the evidence.* In the same case the court
·instructed the jury, in substance, that a person has no right to use any
·more force in self-defense than a person of ordinary prudence would
·deem necessary ; that "if he is struck with the naked hand, and there
is no reason to believe that it was designed to do him great bodily
harm, he will not be justified in returning blows with a dangerous
·weapon ; and if the jury believe, from the evidence, that Ryan (the de-
·ceased) did strike or slap the defendant with his naked hand, without
any design to do him great bodily harm, and they further find, from
·the evidence, beyond a reasonable doubt, that the defendant then as-
·saulted the said Ryan with a deadly weapon, inflicting serious and fatal
wounds upon his person, thereby causing his death, then the jury
·should find the defendant guilty." There was no evidence that the
·deceased struck a blow with his naked hand, but, on the contrary, the
·only evidence of an assault by Ryan was with a deadly weapon, accom-
·panied with a threat against the life of the defendant : · *Held,* that the
_giving of such instruction was prejudicial error.

14. PRACTICE—*defendant not entitled to minutes of evidence taken before the grand jury.* A person charged with the crime of murder is not entitled to the minutes of the evidence taken before the grand jury, before or at the time of the trial, and there is no error in the court's refusing to require the State's attorney to furnish defendant's counsel with the same.

15. SAME—*discretion of court as to time of making opening statement for defendant.* A motion of one on trial for murder, for permission to make his opening statement of the facts after the close of the testimony for the prosecution, is addressed to the sound discretion of the court, and there is no error in refusing the motion when no injury appears to have resulted from the ruling.

WRIT OF ERROR to the Circuit Court of LaSalle county; the Hon. CHARLES BLANCHARD, Judge, presiding.

Messrs. BROWN & AYERS, for the plaintiff in error:

The court erred in overruling motions by defendant for an order upon the State's attorney to furnish defendant's counsel with the minutes of testimony taken before the grand jury.

Counsel for defendant may waive the opening statement until the opposite party has rested his case. 1 Chitty on Crim. Law, 623.

Opinions or conclusions of witnesses are not generally competent evidence. *Linn* v. *Sigsbee,* 67 Ill. 75; *Pennsylvania Co. Conlan,* 101 id. 93.

Where no reason or necessity for a resort to leading questions is made to appear, and they relate to vital points of the inquiry, and the court can see that a party has been injured by allowing such questions to be asked and answered, the judgment will be reversed for that error, alone. *Coon* v. *People,* 99 Ill. 368; *Flynn* v. *Fogarty,* 106 id. 264.

Hearsay evidence is not admissible, as a rule. 1 Greenleaf on Evidence, sec. 154; *Corey* v. *McDaniel,* 42 Ill. 512; *Bishop* v. *Georgeson,* 60 id. 484; *Walmsley* v. *Robinson,* 63 id. 41; *Weyrich* v. *People,* 89 id. 90; *Railroad Co.* v. *Johnson,* 116 id. 206.

When a party is on trial for murder, it is not competent for the prosecution to prove that he has before been arrested for other offenses. *Hopps* v. *People*, 31 Ill. 385; *Gifford* v. *People*, 87 id. 214.

When life and liberty are at stake, every circumstance connected with the alleged crime, and which may tend to palliate the conduct of defendant or explain the motive, should be submitted to the jury. *Williams* v. *People*, 54 Ill. 422.

Defendant was entitled to show the previous character and disposition of the deceased, as justifying him in having a reasonable apprehension that his life was in danger. 1 Wharton on Crim. Law, (7th ed.) sec. 641; 2 Bishop on Crim. Proc. sec. 62; *Queensbury* v. *State*, 3 S. & R. 308; *Oliver* v. *State*, 17 Ala. 587; *Flannagan* v. *State*, 46 id. 703; *Pritchett* v. *State*, 22 id. 39; *Monroe* v. *State*, 5 Ga. 85.

As a general rule, it is proper to receive proof of lawsuits between the parties, and all evidence showing the state of feeling existing between the parties at the time the act was committed, and the disposition of the person killed in making an assault. *Davis* v. *People*, 114 Ill. 86; *Fletcher* v. *People*, 117 id. 185; *Field* v. *State*, 47 Ala. 603; *Wise* v. *State*, 2 Kan. 419; *Hurd* v. *People*, 25 Mich. 418; *State* v. *Bryant*, 55 Mo. 75; *State* v. *Keene*, 50 id. 603.

The People's third instruction was fatally erroneous in assuming a killing, and not only that, but a killing by defendant. It also assumed that defendant gave the fatal cut, thus ignoring the theory that the deceased fell on the shears. *Eames* v. *Blackhart*, 12 Ill. 198; *Sherman* v. *Dutch*, 16 id. 286; *Hopkinson* v. *People*, 18 id. 264; *Bond* v. *People*, 39 id. 27; *Wall* v. *Goodenough*, 16 id. 415; *Conkright* v. *People*, 35 id. 204.

The fifth instruction is erroneous, as being based upon facts of which there was no evidence whatever. Instructions should be based on the evidence. *Belk* v. *People*, 125 Ill. 584; *Stern* v. *People*, 102 id. 540; *Sanders* v. *People*, 124 id. 227; *Hansberg* v. *People*, 120 id. 22.

This instruction does not state the law of self-defense correctly.    It lays down the rule that there must be absolute and actual danger to life, etc., in order to justify a killing. If the circumstances are such as to induce in the party assaulted, or about to be assaulted, a reasonable belief that he is in danger of losing his life or of suffering great bodily harm, then he is justified in slaying his assailant. *Roach* v. *People,* 77 Ill. 30; *Campbell* v. *People,* 16 id. 17; *Maher* v. *People,* 24 id. 241.

If a person be struck or assaulted in any way by a second person, who at the same time threatens to kill him, and gives reasonable evidence of an intention to do so, he is justified in slaying the assailant. *Phillips* v. *Commonwealth,* 2 Duv. 328; *Tweedy* v. *State,* 5 Iowa, 433; *Bohannon* v. *Commonwealth,* 8 Bush, 481; *Campbell* v. *People, supra; Maher* v. *People, supra.*

If a person is assaulted with a fist or hand, and instantly stabs to death his assailant, such killing is not murder,—it is manslaughter. *Stewart* v. *State,* 1 Ohio St. 66; *State* v. *Kennedy,* 20 Iowa, 569; *State* v. *Neeley,* id. 109; *State* v. *Tackett,* 1 Hawk. 210; *State* v. *Yarborough,* id. 78.

Mr. GEORGE HUNT, Attorney General, for the People:

The law gives one accused of crime no right to the minutes of the evidence taken before the grand jury, nor is he entitled to two opening statements to the jury.

There was no error in the admission of evidence, and no prejudice is shown to appear from its admission.    Nor was there error in the giving of instructions.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

This was an indictment against Edward Cannon, for the murder of Martin Ryan.    The evidence shows that death ensued from a wound in the thigh, severing the femoral artery. The evidence leaves no doubt that the wound was inflicted with a pair of shears some time during a personal encounter

between the parties, but just how, or in what manner, or by whom, is not affirmatively shown with any degree of certainty, unless the testimony of the defendant be accepted as true. One theory of the defense was, that Ryan, while under the influence and excitement of liquor, assaulted the defendant after he had retired to bed, by kicking him and attempting to strike him with a pair of shears which the deceased held in his hand; that the defendant warded off the blow, caught the deceased by the leg and threw him on the floor, and that the deceased received the wound by falling upon the shears. The defendant denies any knowledge of how the wound was inflicted, and insists that if in the struggle he in fact did inflict the wound, he was acting in his necessary self-defense. Taking the evidence of the defendant himself, it can not be said that there is no evidence tending to support this theory.

Numerous errors are assigned. The first is, the refusal of the court to require the State's attorney to furnish the defendant's counsel with the minutes of the testimony taken before the grand jury. We have been referred to no authority sustaining the practice insisted upon. Indeed, the practice in this State has been uniformly the reverse. The statute requires that a list of witnesses shall be indorsed on the indictment, a copy of which shall be delivered to the defendant, and this is all that is required. There was no error in the refusal of the court in the respect indicated.

When the State's attorney had concluded his opening, the defendant entered a motion for leave to make the opening statement for the defendant after the close of the testimony for the prosecution, which the court denied, and thereupon defendant's counsel made his statement before any evidence was introduced. At most, this motion was addressed to the discretion of the court, and as no injury is shown to have resulted from the ruling of the court, it was not error.

On the trial of the cause Dr. Applington was called as a witness by the People, who testified that he assisted at the

*post mortem* examination of the body of the deceased, and
described the nature, character and extent of the wounds, and
which thereof was the immediate cause of his death. Witness
was then shown a pair of shears, and asked this question:
"Examine these shears, and tell the jury whether or not the
wounds upon the body of Martin Ryan were likely to have
been produced with that instrument." He answered, "They
could have been produced with that instrument,—yes, sir."
The question was clearly improper, and invaded the province
of the jury. The question whether the wounds were or were
not inflicted in the manner alleged in the indictment, or with
the instrument alleged, was one of fact, for the jury to deter-
mine from all the evidence, and in no sense was the proper
subject of opinion by experts. But the answer of the witness
renders the objectionable character of the question harmless.
Whether the wound could have been produced by a particular
weapon or in a particular way, judging from its nature, char-
acter and extent, was a question upon which the witness, if
an expert, might be called upon to give an opinion. The jury
undoubtedly understood, from the answer, that in the opinion
of this witness the wounds on the body of the deceased could
have been made with an instrument such as that produced to
the witness. Lawson on Expert Evidence, p. 108, secs. 4, 5.

On the examination of Paul Perc, he was asked by the
People, "Was he (Ryan) killed in this county and State?" and
he answered, "He was." This was the only testimony proving
the venue. The question was objected to as leading, and is
clearly objectionable, and is not justified on the ground that
the witness was an unwilling one, or upon any other ground
apparent. This evidence being upon a point practically con-
ceded, and about which there could be no possible controversy,
the leading form of the question could not have been preju-
dicial error.

The same witness, after testifying that Cannon was in the
hall at the time of or immediately after the homicide, and his

statements there, was asked, "When Cannon was in the hall, and swearing, could you hear Ryan say anything on the inside." He answered, "All I heard him say was, 'Keep still.'" The State's attorney then asked the witness, "Did you hear him (Ryan) say 'Don't?'" He answered, "Yes, I heard that, too." The witness afterwards stated that all he heard Ryan say was "Keep still." The manner of examination was highly objectionable, and the record leaves a strong impression that the witness, who was evidently ignorant of our language, was led to the use of the word "don't" as having been used by Ryan, by the form of the question. In a case involving the life of a defendant the court should always be careful in the admission of evidence, as well as in giving instructions to the jury, and see to it that nothing occurs on the trial to unduly prejudice the defendant. *Coon* v. *The People*, 99 Ill. 370.

The witness Perc was also asked what he heard Cannon and Ryan say in the room, if anything, after they came back from town the last time. He answered: "I did not hear for awhile anything said in the room. I dozed off to sleep. My boarders heard it,"—which was objected to by the defendant. The latter part of this testimony was improperly admitted. The effect of it was to strengthen the testimony of others who may have claimed to have heard what was said in the room. It was hearsay, and could only have been based upon the statements of the boarders, some of whom were not called as witnesses in the case.

On the trial, a witness for the People, a police officer, was asked, "Why did you tell Cannon to go home and go to bed?" This was after the difficulty at the boarding-house, but on the same night, when Cannon had gone to the Harrison House and wanted to surrender himself to an officer. The witness answered, "Well, we had often had him under arrest before." The defendant objected to both the question and the answer. The court overruled the objection, and permitted the evidence to go to the jury. In this we think there was manifest error.

The fact that the defendant had been arrested several times before the night he sought to deliver himself up to the officers of the law, is not evidence tending to show his guilt of the homicide charged. The only effect the evidence could have had was to prejudice the defendant with the jury, and if they found that he was a flagrant violator of the law, and had frequently been under arrest, it can scarcely be doubted that the jury would inflict severer punishment than they would otherwise be inclined to do. That would be its evident tendency, and may have induced the infliction of the extreme penalty of the law instead of a lesser penalty, which the jury might have inflicted.

It will not be necessary to discuss the other errors in the admission of testimony before alluded to, further than to say that they are errors which, while perhaps not sufficient of themselves to warrant a reversal, should be avoided on a retrial of the cause.

We are of the opinion that the court did not err in its refusal to admit evidence of the disposition of the deceased as to violence, etc., when intoxicated. The evidence shows that the deceased was, at the time of the homicide, much under the influence of intoxicants. The defendant sought to show that during the three months he and Ryan boarded at the Sullivan House the latter was in the habit of getting intoxicated, and that when under the influence of liquor he was quarrelsome, vicious and dangerous. It is said that the reason given by the court for the exclusion of this evidence was, that there was no evidence tending to show that the deceased was the assailant in the affray. The defendant was a competent witness in his own behalf. No one was present but himself and Ryan during the affray which resulted in the death of Ryan. His testimony was competent to be considered by the jury, and given such weight as in their judgment, in view of all the facts and circumstances proved, it was entitled to. He testified, that after he had gone to bed Ryan entered his

room, kicked him, and assaulted him with the shears, with an expressed determination to take his life. The wounds on the defendant's person would clearly indicate that there was a hostile struggle between them, if the jury believed, from the evidence, there were such wounds. When one is attacked by another in a manner and with a weapon evincing a purpose to take life or to do great bodily harm, the person assaulted is required to judge and determine, by means within his knowledge or such as are apparent, of the necessity of resorting to force in self-defense, and in determining the extent and amount of force required to repel the assault. If the assailant is known to be a dangerous and vicious person, it requires no argument to show that the reasonable fears of an ordinarily prudent man would be aroused more readily and to a much greater extent than if the person was known to be of a quiet and peaceable disposition. So it is the settled rule of law, that where it is shown that the deceased made an assault upon the defendant, the temper and disposition of the party who is the assailant may be shown,—and especially is this so where the assailant was a violent and dangerous man, and such disposition was, at the time of the assault, known to the accused. We are of opinion that the evidence should have been admitted if it had been offered after the introduction of the evidence of the defendant. If the jury believed the defendant, it became highly important that they should be apprised of all the circumstances, real or apparent, surrounding the defendant at the time of the alleged homicide, from which he was called upon to determine the necessity of resorting to force in defense of his life or person. Wharton on Crim. Law, (7th rev. ed.) sec. 641; 2 Bishop on Crim. Proc. sec. 62; *Queensbury* v. *State,* 3 Stew. & Port. 308; *Oliver* v. *State,* 17 Ala. 587; *Pritchett* v. *State,* 22 id. 39; *Monroe* v. *State,* 5 Ga. 85; Wharton on Crim. Evidence, sec. 69; *State* v. *Zellars,* 2 Halst. 230; *State* v. *Smith,* 12 Rich. 430.

Wharton, in his work on Criminal Evidence, (sec. 84,) says :
"Taking the authorities as a whole, therefore, we may hold
that it is admissible for the defendant, after having first estab-
lished that he was assailed by the deceased, and in apparent
danger, to prove that the deceased was a person of ferocity,
brutality, vindictiveness and excessive strength, such evidence
being offered for the purpose of showing either (1) that the
defendant was acting in terror, and hence incapable of that
specific malice necessary to constitute murder in the first de-
gree, or (2) that he was in such apparent extremity as to make
out a case of self-defense, or (3) that the deceased's purpose
in encountering the defendant was deadly."

When the defendant is the assailant or commences the af-
fray, he will not be entitled to show in defense the vicious or
wicked disposition of the person whom he has slain. Having
sought and brought on the affray he can not shield himself
from punishment for the homicide by showing that he aroused
the vicious or wicked passions of the party killed. But when
evidence is submitted from which the court can see that the
jury may, if they give it credence, find that the party killed
was the assailant, and that the defendant acted in self-defense,
such evidence becomes admissible, as tending to show the cir-
cumstances by which the defendant was surrounded, and the
extent of the apparent danger to his life or person, and from
which he might be justified in believing that his life was in
danger, or that he was in danger of suffering great bodily harm
at the hands of the assailant, and illustrating to the jury the
motive by which he was influenced. It appears, however,
that the evidence was offered before the defendant testified,
and was rejected, and that it was not again offered after his
testimony. At the time it was offered there was no evidence
showing that the deceased was the assailant, and the evidence
was then properly excluded. If the defendant desired the evi-
dence to go to the jury, it should have been offered after the

introduction of the evidence tending to show the assault by the deceased.

The third instruction given at the instance of the People was as follows:

"The court instructs the jury, that in considering whether the killing was in self-defense, the jury should consider all the circumstances attending the killing, the conduct of the parties at the time and immediately prior thereto, and the degree of force used by the prisoner in making what is claimed to be his self-defense, as bearing upon the question as to whether the blows, cuts and wounds given the deceased were actually given in self-defense, or whether they were given in carrying out an unlawful purpose; and if the jury believe, from the evidence, that the force used was unreasonable in amount and character, and such as a reasonable mind would have so considered under the circumstances, it is proper for the jury to consider that fact in determining whether the killing was in self-defense or not."

This instruction assumes the killing of the deceased, and that the defendant gave the blows, cuts and wounds from which he died. It is true that the interposition of the defense, of self-defense, presupposes that the defendant may have taken the life of the person killed; but in this case no living person saw or knew of the manner of the assault but the defendant. He, as we have seen, denies the use of the deadly weapon, or that he inflicted any blows, cuts or wounds therewith. He admits having the deadly weapon in his hand, but insists that if any blow was struck by him of the character producing the fatal wound he has no knowledge of it, and that all he did, at any time, was in his necessary self-defense, to repel the assault made upon him by Ryan. Under these circumstances the instruction should have been so drawn as not to foreclose the consideration by the jury of this evidence, as was done by the assumption of the instruction that the blows, cuts and wounds were inflicted by the defendant. It can be justly said

that the fact was controverted, and that the instruction was calculated to withdraw from the jury a just consideration of the evidence. We have had frequent occasion to condemn instructions of like character. *Eames* v. *Blackhart,* 12 Ill. 195; *Sherman* v. *Dutch,* 16 id. 286; *Hopkinson* v. *The People,* 18 id. 264; *Bond* v. *The People,* 39 id. 27; *Hoge* v. *The People,* 117 id. 46.

The fifth of the People's instructions was as follows:

"The court instructs the jury, as a matter of law, that a person has no right to use any more force in self-defense than a person of ordinary prudence would deem necessary under the circumstances. If he is struck with the naked hand, and there is no reason to believe that it is designed to do him great bodily harm, he will not be justified in returning blows with a dangerous weapon. And if the jury believe, from the evidence in this case, that Martin Ryan did strike or slap the defendant with his naked hand, without any design to do him great bodily harm, and they further find, from the evidence, beyond a reasonable doubt, that the defendant then assaulted the said Martin Ryan with a deadly weapon, inflicting serious and fatal wounds upon his person, thereby causing his death, then the jury should find the defendant guilty."

There was no evidence of any blows struck by the deceased, except that of the defendant, and no evidence whatever that he struck a blow with his naked hand, but, on the contrary, the only evidence of an assault by the deceased was with a deadly weapon, accompanied with a threat against the life of the defendant. The only direct evidence, therefore, upon this subject, tended to show a violent assault with a deadly weapon, and with an expressed murderous intent. There was no evidence upon which this instruction could be based. It was therefore improperly given, and is prejudicial error. *Belk* v. *The People,* 125 Ill. 584; *Sanders* v. *The People,* 124 id. 227; *Stern* v. *The People,* 102 id. 540; *Hansberg* v. *The People,* 120 id. 21; *Hoge* v. *The People,* 117 id. 46. The instruction is

otherwise inaccurate, in excluding the consideration of the apparent conditions surrounding the defendant. *Campbell* v. *The People,* 16 Ill. 17; *Maher* v. *The People,* 24 id. 241.

We do not deem it necessary to pursue the investigation further. Exceptions are taken to other rulings of the court, which will probably be corrected upon another trial, and we do not consider them of sufficient moment to warrant discussion.

For the reasons already given, the judgment of the circuit court is reversed and the cause remanded for re-trial.

*Judgment reversed.*