(No. 15713.—Reversed and remanded.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HENRY DUGAS, Plaintiff in Error.

*Opinion filed December 19, 1923.*

1. CRIMINAL LAW—*evidence tending to show apparent danger of defendant is admissible in his behalf in prosecution for assault.* In a prosecution for assault with intent to murder, if evidence is introduced from which the jury may find that the person injured was the assailant, the defendant may introduce, not alone by his own testimony but by that of other witnesses, evidence of the vicious disposition of the injured person or of threats which he made against the defendant, as tending to show the circumstances by which the defendant was surrounded, the extent of his apparent danger and the motive by which he was influenced.

2. SAME—*when necessity of defense of another is question for jury—instruction.* The right of defense against a felonious attack extends not only to the defense of one's self but to the defense of others, whether relatives or strangers; and where there is evidence from which the jury may believe that the prosecuting witness was the assailant against both the defendant and another person, it is a question for the jury whether it was necessary for the defendant to strike, in defense of his friend, the blow for which he is being tried for assault with intent to murder, and an instruction should not limit the defense to the defense of the defendant's own person.

3. SAME—*when instruction as to "claim" of self-defense is not improper.* In a prosecution for assault with intent to murder, an instruction that the defendant cannot avail himself of the "claim"

of necessary self-defense if the necessity for self-defense was brought on by his own wrongful act, is not erroneous in using the word "claim" instead of "defense" or "plea." (*People* v. *O'Gara,* 271 Ill. 138, and *People* v. *McGinnis, 234* id. 68, distinguished.)

4. SAME—*necessity for self-defense is sufficient if apparent to the defendant as a reasonable person.* In a prosecution for assault with intent to murder, where the defendant sets up the defense of himself and his companion, who were both assaulted by the prosecuting witness, the question for the jury is not whether it appears to them from the evidence that the defendant's act was necessary, but whether it appeared to the defendant, under the circumstances under which he was placed and acting as a reasonable person, that he or his companion was in danger of receiving great bodily harm.

5. SAME—*an indictment for murder includes any lower degree of crime embraced therein.* It is sufficient to prove so much of an indictment as shows that the defendant has committed a substantive crime therein specified, and under an indictment for murder by means of a felonious assault the defendant may be convicted of any lower degree of crime embraced within the charge of murder, such as assault with intent to murder, or other form of assault.

6. SAME—*when motion for new trial should be allowed to show acquittal of higher offense.* Where a defendant is first indicted for assault with intent to murder, and while the cause is pending on his motion for a new trial after a verdict of guilty the prosecuting witness dies and the defendant is indicted for murder and is acquitted, his motion for a new trial should be granted to permit him to plead his acquittal of the higher offense in bar of the charge of assault.

WRIT OF ERROR to the Circuit Court of Vermilion county; the Hon. WALTER BREWER, Judge, presiding.

ACTON, ACTON & SNYDER, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, JOHN H. LEWMAN, State's Attorney, and JAMES B. SEARCY, for the People.

Mr. JUSTICE DUNN delivered the opinion of the court:

Henry Dugas was convicted in the circuit court of Vermilion county of an assault upon August Obert, Jr., with intent to murder him, and has sued out a writ of error to reverse the judgment.

The affray out of which the indictment arose occurred on the night of January 20, 1923, in Westville, about eleven o'clock. Dugas was conducting a garage on the west side of a street in Westville just south of what is called a soft drink parlor conducted by John Dixon, which was separated from the garage by an alley. For some time before eleven o'clock the plaintiff in error, together with Vannis Mullin, Frank Barker and another person, were in the soft drink parlor standing at the bar just behind the screen, at its east end. Dixon was behind the bar. About 10:30 Obert, Franklin Quick and Mrs. Mabel Moore, who was Quick's cousin, came into the soft drink parlor and went to the west end of the bar, where they ordered drinks, and Dixon waited on them. Dugas and his companions were singing. Someone said it was closing-up time, and the Dugas party went out. There was no light on the street. Obert and his party went out on the sidewalk and immediately a fight began. The evidence is confusing and contradictory. Obert and his two companions testified for the prosecution, and Dugas, Barker and Mullin for the defense. The witnesses do not agree as to who began the difficulty,— as to whether Dugas struck Obert or Obert struck Dugas,— but they engaged in a fight on the sidewalk and in the space between the buildings. Dugas testified that Obert knocked him down and was on top of him; that Mullin came to Dugas' assistance and pulled Obert off of him; that Obert and Mullin had a struggle and Obert got Mullin down and got on top of him. Dugas ran into the soft drink parlor and got a piece of inch-and-a-quarter gas pipe about two feet long, which was on the floor behind the door, and came out where Obert was just getting up off of Mullin and hit Obert a blow on the head which knocked him down, fractured his skull and caused serious injury, some pieces of the fractured bone piercing the substance of the brain. Obert testified that as he went out the door he saw Dugas, Mullin and two others whom he did not know, right outside

the door, and all four "jumped" him and "smashed" him and backed him up against the soft drink parlor, and the next thing Dugas or somebody went into the saloon and got a pipe or something and hit him with the pipe. It would do no good to review the account of each witness giving the details of the fight. It is enough to say that the evidence was contradictory and of such a character as to require that the trial should have been conducted without serious error.

The plaintiff in error testified that he had seen Obert for the first time in the previous October; that the next time he saw him was in front of his garage about four weeks before the fight, when he had a difficulty with Obert. Obert stopped in front of Dugas' gasoline tank and Dugas went up to the tank and asked him if he wanted gas, and he said no. Dugas then asked him to drive up or back up, because if somebody drove up to get gasoline he would be in the way and Dugas would have to bother him. Obert was intoxicated, and stepping out of the car he advanced on Dugas, calling him a foul name, and said, "You are going to make me get away from there?" Dugas said, "No; you can stand there if you want to." Obert struck at Dugas. Dugas backed away and Obert struck at him again. Then Dugas walked through the garage, picked up a bottle and threw at him, and Obert ran Dugas back of the counter and struck at him twice there. Dugas dodged and Obert ran him out of the office. He went toward the garage and Obert followed him. Passing a coal pile Dugas picked up a piece of coal and Obert swore at him. A few minutes afterward Dugas saw Obert in front of the garage, and Obert said, "I will kill you," repeating the foul name which he had called Dugas. Three or four days afterwards Dugas saw Obert in Dixon's soft drink parlor. He looked at Dugas and came toward him and was saying something which Dugas did not understand, but Dugas ran out of the place.

The defense offered to prove these facts also by Vannis Mullin and Frank Laker, but an objection by the prosecution to the testimony was sustained. The reason given for sustaining the objection was that the testimony of the defendant showed that at the time the blow was struck he was not being assaulted but there was an altercation between the prosecuting witness and another party, and that the defendant got up and went away some fifteen or twenty feet into the building and came back to the place without any assault of any kind being made upon him and struck the prosecuting witness the blow upon which the indictment was based. The court said that the proof was not competent when the statement of the defendant clearly showed that there was no assault being made upon him at the time the blow was being struck. The court was in error in excluding the testimony and in assuming that the plaintiff in error, under the evidence, had no right to strike the blow. That was a question for the jury to determine from all the competent evidence that might be produced. The plaintiff in error, according to his statement, had been knocked down, and his friend who interfered for his protection had also been knocked down. The plaintiff in error, leaving Obert fighting Mullin, ran into the saloon and got the gas pipe and immediately ran out. The whole matter occupied but a few seconds. He found Obert rising up from Mullin, but it was for the jury to say whether under the circumstances the fight was over and Obert's assault had ceased, or whether Dugas might justifiably think that for the protection of himself and Mullin, or either one of them, it was necessary for him to strike the blow which he did strike. The evidence was admissible for the purpose of showing the state of mind of Dugas, his relations with Obert and the violence of Obert's character, to enable the jury to determine whether his action was influenced by fear and was for his own protection or the protection of Mullin, or was

a blow struck in the heat of passion aroused by the assault which had gone before, or was the result of malice and an intention to murder Obert. When evidence has been introduced from which, if they believe it, the jury may find that the person injured in an affray was the assailant, evidence of his wicked or vicious disposition or of threats made against the defendant is admissible as tending to show the circumstances by which he was surrounded, the extent of his apparent danger and the motive by which he was influenced. (*Cannon* v. *People,* 141 Ill. 270; *Carle* v. *People,* 200 id. 494; *People* v. *Terrell,* 262 id. 138.) Dugas had testified himself to the facts proposed to be proved, but he was the defendant who was on trial, directly interested in the verdict, and these circumstances might very well affect his credit with the jury. He had a right to have the evidence of the disinterested witnesses which he offered heard and the case passed upon in connection with their version of the matter as well as his own. The court's ruling was based upon the theory that the plaintiff in error, after departing from the scene of the affray, had returned and without any renewal of the assault upon him had struck Obert the blow on the head. So far as any defense of himself was concerned the plaintiff in error was in no immediate danger after he went into the soft drink parlor. He had escaped from the affray, but he was not obliged to desert his companion who according to his testimony had come to his rescue when Obert had him down and had pulled Obert off of him only to be felled by Obert in his turn. Dugas, under his testimony, had the same right to defend Mullin that Mullin had to defend himself. The right to take life in defense against a felonious attack extends not only to the defense of one's self but to the defense of others, whether relatives or strangers. (*Cunningham* v. *Neagle,* 135 U. S. 1; *State* v. *Hennessy,* 29 Nev. 320.) It is true that Obert was just rising up from Mullin when Dugas struck him, but the question whether he had ceased

his assault or whether it was apparently necessary for Dugas to strike the blow was a question for the jury to decide.

Objection is made to a number of the instructions which were given for the People. The first instruction told the jury that "the law of self-defense cannot be successfully invoked by the defendant if he acted from a spirit of revenge or from a spirit of utter disregard of human life when he assaulted August Obert, Jr., and at a time when he had no reasonable cause to apprehend injury to himself." The objections made to it are, that it assumes that the defendant assaulted Obert and that the assault was made at a time when he had no reasonable cause to apprehend injury to himself, and that it limits the right of defense to the danger of injury to the defendant himself even though there was good reason to apprehend injury to Mullin. Whether the instruction makes the supposed assumptions or not, it clearly limits the defense to defense of the defendant's own person and is erroneous for that reason.

In the fifth instruction the jury were told that a defendant charged with assault with intent to commit murder can not avail himself of the claim of necessary self-defense if the necessity for self-defense was brought on by his own deliberate and wrongful act. It is argued that the use of the word "claim" is erroneous on the authority of *People v. O'Gara,* 271 Ill. 138, and *People v. McGinnis,* 234 id. 68. The instruction in those cases was held to·be erroneous because it characterized the defense of the plaintiff in error as "what is claimed to be this self-defense," and it was held that this form of characterizing the defense as "claimed self-defense" might have the effect to induce the jury to believe that the court looked upon the defense interposed as without merit. This instruction is not subject to that criticism. The word "claim" is not used in this instruction by way of disparagement, and the instruction is no different from what it would be if instead of the word "claim" the word "defense" or "plea" had been used.

By the third instruction the jury were told that "while under apparent necessity one may use force in self-defense, yet if the force used is carried beyond the point of apparent necessity for protection of life or to prevent receiving great bodily harm, then it may in its turn constitute an assault which is unlawful and criminal." This instruction does not limit the apparent necessity to the necessity which was apparent to the plaintiff in error, but it is likely to mislead the jurors to believe that they should decide whether in their judgment the act of the defendant was apparently necessary in self-defense. The question for the jury to determine was not whether it appeared to the jury, from the evidence in the case, that the act of the plaintiff in error was necessary, but the question is whether it appeared to the defendant, under the circumstances under which he was placed and acting as a reasonable person, that he or his companion was in danger of receiving great bodily harm.

The eleventh instruction was:

"The court instructs the jury that the true test of self-defense is, was the defendant attacked by August Obert, Jr., in such a manner and under such circumstances as were calculated to raise in the defendant's mind a reasonable and well grounded belief that he was in imminent danger of life, or of great bodily harm. The danger, if any, must have been really or apparently imminent and pressing, and not merely imaginary or existing in the defendant's imagination; for unless there was some overt act by August Obert, Jr., apparently indicating the design on the part of August Obert, Jr., to take the life of the defendant, or to do the defendant great bodily harm, the defendant was not justified in committing any assault on August Obert, Jr., in manner and form as charged in the indictment."

This instruction was erroneous because it confines the right of defense to defense against acts apparently indicating design on the part of Obert to take the life of the defendant or to do the defendant great bodily harm. The

defendant, upon the version of the affair given by him and his witnesses, had the same right to defend against the assault on Mullin as the assault on himself.

. The case was tried at the January term, 1923, and the verdict was returned on March 10. Motion was made for a new trial, which was pending on April 16, when Obert died. At the May term Dugas was indicted for the murder of Obert, was tried and was acquitted on July 6. The motion for a new trial in this case had been pending during all this time and after the judgment on the indictment for murder was called for hearing. The plaintiff in error, among other reasons, presented a transcript of the record of the proceedings upon the indictment for murder and claimed that the motion for a new trial should be granted to permit him to plead that acquittal in bar of the charge of assault with intent to murder. Had judgment been entered upon the verdict against the plaintiff in error and had he been sentenced, his conviction would have been no bar to his prosecution upon the indictment for murder. (*Commonwealth* v. *Ramunno,* 219 Pa. 204; *State* v. *Littlefield,* 70 Me. 452; *Commonwealth* v. *Roby,* 12 Pick. 496.) Had the indictment for murder resulted in his acquittal before the trial of the indictment for assault with intent to murder, the acquittal might have been shown in bar of the latter indictment. It is a general rule of the criminal law that it is sufficient to prove so much of an indictment as shows that the defendant has committed a substantive crime therein specified. (1 Chitty on Crim. Law, 250.) So where' the offense charged in an indictment includes within it another offense of lower degree, the defendant may be convicted of the lower offense even though the evidence fails as to the offense of higher degree. (1 Bishop's New Crim. Law, sec. 780; 1 Roscoe on Crim. Evidence,—8th ed.—123; *Stewart* v. *State,* 5 Ohio, 145.) Under an indictment for murder a defendant may be found guilty of manslaughter, and the verdict is not only a conviction of manslaughter

but is an acquittal of the charge of murder. (*Brennan* v. *People,* 15 Ill. 511.) The general rule that when an indictment for a higher crime embraces all the elements of an offense of an inferior degree the jury may discharge the accused of the higher crime and convict him of the lower if the evidence justifies it finds illustration in many cases. (*Earll* v. *People,* 73 Ill. 329; *Howard* v. *People,* 185 id. 552; *Watson* v. *State,* 116 Ga. 607; *Davis* v. *State,* 39 Md. 355; *State* v. *Phinney,* 13 Ida. 307.) Under an indictment for murder by means of a felonious assault the defendant may be convicted of any lower degree of crime embraced within the charge of murder made in the indictment. If the indictment contains averments sufficient to charge the offense he may be convicted of shooting at another; (*Watson* v. *State, supra;*) assault with intent to murder; (*Letcher* v. *State,* 145 Ala. 669; *Thomas* v. *State,* 121 Ga. 331; *State* v. *O'Kane,* 23 Kan. 244;) willfully and maliciously shooting and wounding; (*Bush* v. *Commonwealth,* 78 Ky. 268;) an aggravated assault; (*Bean* v. *State,* 25 Tex. App. 346; *Staff* v. *State,* 3 Tex. App. 138;) or an assault and battery. *State* v. *Scott,* 24 Vt. 127; *Commonwealth* v. *Drum,* 19 Pick. 479.

The acquittal of the plaintiff in error on the indictment which charged him with murder acquitted him of every charge included in that crime. If it had occurred before his trial on the indictment for the assault the judgment would have been admissible on that trial as evidence of a previous acquittal. Because it occurred after the verdict it could not be given in evidence on the trial. The cause, however, was still pending, and when before judgment it was made to appear, upon his motion for a new trial, that he had already been tried and acquitted of the charge, his motion for a new trial should have been sustained.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*