(June 7, 1900.)

## STATE v. YEE WEE.

[61 Pac. 588.]

CRIMINAL LAW—EVIDENCE.—The evidence examined and held to be sufficient to justify verdict of murder in first degree.

SAME—DYING DECLARATIONS.—An *ante-mortem* statement as to the cause of death, made by the deceased soon after receiving an injury from which he died, made when death was apparently imminent, and while the deceased believed that he was about to die, is admissible in evidence as against the defendant, on the charge of murdering the deceased, although deceased had not been informed by a physician that he was about to die.

APPELLATE JURISDICTION.—Upon appeal in a criminal case, the jurisdiction of the appellate court is confined to a review of the case made in the trial court.

(Syllabus by the court.)

APPEAL from District Court, Blaine County.

Lyttleton Price, W. T. Reeves and P. M. Bruner (Hawley,. Puckett & Hawley, of Counsel), for Appellant.

The evidence of Dr. Brown that he never at any time, told the wounded man that he was going to die or that he told him of his condition and in this entire record there is nothing to show that he knew, or ever suspected, that he was in danger of dying from the effects of the wound. We insist that before such statements are admissible as evidence it must be shown that the wounded man, at the time he made the statement, was under a sense of impending death and without any hope whatever of recovery. (Clark's Criminal Procedure, 525, 526, and authorities there cited; *People v. Glem,* 10 Cal. 32; *People v. Vernon,* 35 Cal. 51, 95 Am. Dec. 49, and note; *People v. Taylor,* 59 Cal. 640; *People v. Ah Len,* 98 Cal. 133, 32 Pac. 880; *People v. Sanchez,*. 24 Cal. 22; *People v. Hodgdon,* 55 Cal. 72, 36 Am. Rep. 30; *People v. Gray,* 61 Cal. 164, 44 Am. Rep. 549.) Dying declarations should point distinctly to the cause of death, and to that alone. Any declaration made as to the cause of death and couched in such vague and indefinite expressions as to require aid by inference or supposition should be held inadmissible. (3. Rice on Evidence, 530; *State v. Baldwin,* 79 Iowa, 714, 45 N..

W. 297; *State v. Center,* 35 Vt. 378.)    Another never varied
rule in this regard is that dying declarations are restricted to
the act of killing and to the circumstances immediately preced-
ing it and forming part of the *res gestae.*    Matters contained in
a dying declaration are never competent unless they would be
admissible if they came from the lips of a living witness.
(*Montgomery v. State,* 80 Ind. 338, 41 Am. Rep. 815; *Benns v.
State,* 46 Ind. 311; Greenleaf on Evidence, c. 9.)

Samuel H. Hays, Attorney General, for the State, cites no au-
thorities.

QUARLES, J.—The appellant was tried upon information
charging him with the murder of one Wee Waugh, alleged to
have been committed in Blaine county in May, 1899, was tried
and convicted, and sentenced to death.    The appellant moved
for a new trial, which was denied, and has appealed from the
order denying him a new trial and from the judgment of convic-
tion.    Several witnesses, all Chinese, testified that on the night
of May 3, 1899, at about 9 o'clock they were at the store of Sam
Waugh, in the quarter known as "Chinese Town," in Hailey,
the deceased, Wee Waugh, being among the number, when ap-
pellant came into said store; that appellant had a paper sack on
his hand; that soon thereafter a shot was fired, when the de-
ceased Wee Waugh, exclaimed, "Wee shoot me! Wee shoot me!"
A number of witnesses testified that at the time of the shooting
the deceased was standing at the inside or back of the table, and
that the accused approached the table on the other side from the
deceased, leaned his arm on the table, and slightly raised his
hand, whereupon the report of a firearm was heard, when the
deceased exclaimed: "Wee shoot me! Wee shoot me!"    There-
upon nearly all of the parties, including the accused and the de-
ceased, ran out of the house.    Immediately after the shooting a
paper bag, similar in appearance to the one held in the hand of
the accused, was found by the door of the store building, picked
up and carried in the house by one of the witnesses, and there
kept until morning, when it and a candle were turned over to the
county attorney.    It was shown that the candle was burning
on the table between the deceased and the accused at the time the

shot was fired, and that the candle then went out; that a piece was cut out of the candle, making a notch therein. that this notch was not in the candle before the shot. Said paper bag and candle were introduced as evidence before the jury. The appellant objected to the introduction of the paper bag, but did not object to the introduction of the candle. The introduction of both the candle and the paper bag in evidence is now assigned as error, on the ground that they were not sufficiently identified. We have carefully considered the evidence, and think that it was sufficient to identify the candle. Was it sufficient as to the paper bag? Wee Gwing testified that accused came in with a yellow bag, like the one exhibited, in his hand; that he saw the paper bag introduced in evidence, after the shot, out by the door. Chin Shu testified that the accused had a paper bag in his hand; that he pointed paper bag at deceased, but thought the paper bag held by accused was not as large as the one introduced in evidence. Gui Waugh testified: "I saw the paper bag before the shot went off. . . . . Wee had it on his hand when the shot went off. He raised up the bag high enough for Wee Waugh. . . . . I have seen a paper bag like this, but did not see this one before. I saw this bag right after the shot outside the door in front of Sam Waugh's store. I picked it up, and brought it in the house. It stayed in the house that night." The witness then stated that the paper bag remained in the house until the next morning, when the sheriff and county attorney went and took it and the candle away. This witness also testified: "Wee Waugh was hurt there that night, Wee Waugh holler out, 'Wee shoot me!' . . . . Wee Waugh died May 19th."

After a careful consideration of all the evidence, we are of the opinion that the paper sack was properly introduced in evidence. The finding of this paper bag just outside the door out of which accused fled after the shooting, and its ·similarity to the one held over the hand of the accused, were circumstances tending to identify it. The candle and the paper bag are not before us. Their appearance doubtless would show whether they were in close proximity to a firearm which had been discharged, and without an inspection of such exhibits, under all of the evidence,

we are unable to conclude that the admission of either of these exhibits was error.

There is only one other error assigned, and that is the introduction of the evidence of the *ante mortem* statement of the deceased, to the effect that the accused shot the deceased, testified to by J. D. Jones, a dentist, and William Rember, the sheriff, and the action of the court in refusing to strike out such evidence. This alleged error is predicated upon the idea that before such statement could be introduced it must be shown that the attending physician informed deceased that he was going to die. We cannot agree with this contention. To make such statement admissible it must be shown that it was made by deceased while under the belief that death was impending, the imminence of death being apparent at the time. It makes no difference what influence induced the deceased, whose death is apparently imminent, to believe that he is about to die—whether from his own condition and feelings, or the advice of a physician —his statement as to the cause which brings about his death, made under such circumstances, is admissible. The evidence shows that said *ante mortem* statement was made about three hours after the shooting, and while deceased believed that he was about to die, and while his death was apparently imminent. he lived sixteen days after the injury, but Dr. Brown, his physician, testified that he (the physician) expected the death of deceased to occur at any time. It might well be argued that the admission of the evidence showing this dying declaration was unnecessary, as there was sufficient evidence to convict the accused without it, but we do not think that the admission of such evidence was error.

Appellant contends that the evidence was insufficient to justify the verdict, because it was not proven that appellant had any firearm at the time of the shooting, and because the evidence does not show premeditation. We cannot agree with this contention. The evidence showing that accused walked into the presence of deceased with a paper bag over his hand; that accused rested his arm on the table, and pointed his hand, covered by such paper bag, toward deceased; that thereon there was a flash seen and a report heard; that deceased then exclaimed that

the accused shot him; and that the accused immediately ran away —was sufficient to show that accused was not only armed, but that he deliberately, and with malice aforethought, shot deceased with the intent to kill him. The evidence further shows that appellant immediately after the shooting was making inquiries of different persons as to who did the shooting and who was shot; thus feigning ignorance of his own act. Such acts on the part of the defendant tended to prove his guilt. The evidence was amply sufficient, and would be if all of the evidence complained of was out of the record.

It is also contended by the learned counsel for appellant that the evidence of the Chinese witness who interpreted a paper written by the accused was untrue, and said witness prejudiced against the appellant. Taking the testimony of the appellant, and ignoring the other testimony touching this point, we would have to agree with this contention. But the evidence, taken as a whole, does not show that this contention is well founded. The paper alluded to was written in the Chinese language, and was given by the appellant to the sheriff to be posted by the latter in the Chinese quarters, in Hailey. Said paper was interpreted by Charlie Shung at the trial to read as follows: "Any particular friend for Yee Wee; any relation of Yee Wee: This trial comes off Monday. I wish all to come to court; explain this case. Nobody force he to shoot Wee Waugh. He done it for himself, right on this paper. If you don't believe it, send down to 'Frisco. Here it is, Yee Wee done; here it is, you say no man force you. You done it yourself, right here. You send it down to San Francisco, and find out." Another interpretation of this paper was made at the trial by Wang Fung, substantially the same as the above. The defendant gave a different interpretation. It was for the jury to say which interpretation was correct, and also to determine the weight and effect of the evidence. We are now asked to consider an interpretation of said paper which has been made since the trial, and which is certified by the secretary (interpreter) of the Chinese legation at Washington, District of Columbia, to be correct. But this interpretation and certificate are not, and would not have been, competent evidence at the trial, and could not there have been received. But,

if it was competent evidence, we could not receive it or consider it on the hearing of this appeal, as the doing so would be assuming to a certain extent original jurisdiction not vested in this court by the constitution, our jurisdiction being limited to a review of the case tried by the lower court. It is proper to suggest that jurisdiction to review this case on the ground of evidence that has been discovered since the bringing of its appeal is vested under the constitution in another tribunal, to wit, the board of pardons. Finding no error in the record which would justify a reversal, and the evidence being sufficient to sustain and justify the verdict, the order denying a new trial and the judgment are both affirmed.

Huston, C. J., and Sullivan, J., concur.