STATE, Respondent, v. WILLIAM C. WILSON, Appellant.

[243 Pac. 359.]

CRIMINAL LAW — HOMICIDE — MOTION TO QUASH — QUALIFICATION OF JURORS—DE FACTO OFFICERS—DYING DECLARATIONS—STATEMENTS BY DEFENDANT — EXHIBITS — THREATS BY DECEASED — ARREST — RIGHT OF OFFICER IN MAKING ARREST — MISDEMEANORS — DE-CEASED'S DISPOSITION—EVIDENCE—CROSS-EXAMINATION OF DEFEND-ANT—IMPEACHMENT—INSTRUCTIONS.

1. Granting the prosecutor leave not to file an information, and discharging the defendant without prejudice before an information is filed in the district court, are not grounds upon which to base a motion to quash.

2. Where the complete examination of a prospective juror on the disputed point of qualification is not in the transcript, the trial court's rulings in connection therewith will not be presumed erroneous.

3. A venireman who has conscientious scruples against the infliction of the death penalty is not qualified, where the offense charged is murder in the first degree.

4. Where an office exists under the law, and a person is appointed or elected to fill such office, and duly qualifies and enters upon the discharge of his official duties, he is a *de facto* officer, notwithstanding the fact that he may not possess the prescribed statutory qualification of citizenship.

Publisher's Note.

3. Prejudice against capital punishment as disqualifying juror in criminal case, see note in Ann. Cas. 1912A, 786. See, also, 16 R. C. L. 271.

4. *De facto* officers, see notes in 19 Am. Dec. 63; 140 Am. St. 164. See, also, 22 R. C. L. 597.

Points Decided.

5. An *antemortem* statement as to the cause of death, made by the deceased soon after receiving an injury from which he died, made when death was apparently imminent and while the deceased believed that he was about to die, is admissible in evidence as against the defendant, on the charge of murdering the deceased.

6. Voluntary statements made by the defendant at the time of and while under arrest, shown not to have been made under, or induced by, threats, coercion, violence or the hope or promise of benefits to accrue to him therefrom, may be proved on the trial.

7. When an arrest is being made by an officer under the authority of a warrant, after information of the intention to make the arrest, if the person to be arrested either flees or forcibly resists, the officer may use all necessary means to effect the arrest.

8. An officer making an arrest has the right to use such force as is necessary to subject the person sought to be arrested to his authority, but the officer may not kill a misdemeanant in arresting him; and if the officer uses unnecessary force, the relations between the parties become the same as between private individuals; and if the person sought to be arrested believes or has reason to believe that he is in danger of being killed, or of receiving great bodily injury, he may defend himself, repelling force with force, to the extent of slaying the officer when necessary to save his own life, or save himself from great bodily injury.

9. On a charge of homicide where self-defense is relied upon, the reputation of the deceased for being turbulent, quarrelsome or dangerous, if communicated to the defendant, is admissible; this rule, however, may not on direct examination be extended to include specific acts based on hearsay.

Publisher's Note.

5. What constitute dying declarations and when admissible, see note in 86 Am. St. 637.

Necessity to admissibility of declaration that expectation of death is "immediate," see note in 17 Ann. Cas. 827.

Inference from wound or state of illness that declarant was sensible of impending death as rendering declaration admissible, see note in Ann. Cas. 1912C, 85.

7. See 2 R. C. L. 470–474.

9. Admissibility in prosecution for homicide of evidence of character or reputation of deceased, see notes in 124 Am. St. 1018; 4 Ann. Cas. 338; 8 Ann. Cas. 357; 11 Ann. Cas. 229.

10. If a defendant has, on direct examination, testified concerning any matter connected with the transaction, he may be fully cross-examined concerning any matters of which he has testified.

11. Where the appellant had testified, on cross-examination, without objection, that the deceased had searched his place several times, it was not prejudicial error to ask appellant if the officer had made such searches with the required search-warrants, or to compel an answer to such question.

12. Where an offer of proof includes inadmissible matter, it is not erroneous to sustain an objection to the entire offer.

13. Instructions examined and *held* not prejudicially erroneous.

APPEAL from the District Court of the Ninth Judicial District, for Bonneville County. Hon. O. R. Baum, Judge.

Appellant, charged with murder in the first degree, was convicted of murder in the second degree. *Affirmed.*

Ralph L. Albaugh and W. A. Ricks, for Appellant.

C. S., secs. 8819, 8865–8874, and 8875, plainly contemplate that the filing of new indictment or an information after demurrer sustained, or upon a dismissal of the cause, shall rest in the discretion of the court, not in the discretion of the district attorney, and that it shall be filed upon the court's direction to the district attorney to do so. (*Ex parte Williams,* 116 Cal. 512, 48 Pac. 499; *Adams v. State* (Okl.), 209 Pac. 189; *Ex parte Hayter,* 16 Cal. App. 211, 116 Pac. 370; *State v. Bilboa,* 38 Ida. 92, 213 Pac. 1025, 222 Pac. 785; *In re Pierce,* 8 Ida. 183, 67 Pac. 316.)

In the event the offense charged is punishable with death, the entertaining of conscientious opinions such as would preclude the finding of the accused guilty is ground of challenge for implied bias. (C. S., sec. 8930, subd. 9.)

The appointing power must comply with the formalities prescribed by law in order that appointment may be valid and the appointment of an ineligible person is an absolute nullity. (29 Cyc. 1374; *People v. Lindblom,* 215 Ill. 58, 74 N. E. 73; *People v. Platt,* 117 N. Y. 159, 22 N. E. 937; *State v. Aldermen of Pierce City,* 91 Mo. 445, 3 S. W. 849.)

The validity or regularity of an appointment or election

of a public officer cannot be inquired into in an action to which he is not a party, but enough inquiry into the validity of his title may be made to determine whether he is an intruder, since the acts of an intruder may be treated as null and void in any proceeding. (29 Cyc., 1375; *United States v. Alexander*, 46 Fed. 728.)

If an officer in making an arrest acts in such a wanton and menacing manner as to threaten persons being arrested with serious bodily harm, the latter have the right to defend themselves by means proportionate with the necessities of the occasion, as viewed from their standpoint. (*Snow v. State*, 91 Tex. Cr. 1, 237 S. W. 563; *State v. Anselmo*, 46 Utah, 137, 148 Pac. 1071; *Condron v. State* (Tex. Cr.), 155 S. W. 253; *Owen v. State*, 58 Tex. Cr. 261, 125 S. W. 405.)

As a general rule, an officer has no right, except in self-defense, to kill a mere misdemeanant, in attempting to arrest him or to prevent his escape after arrest. (*Harding v. State*, 26 Ariz. 334, 225 Pac. 482; *State v. Smith* (Iowa), 101 N. W. 110; *North Carolina v. Gosnell*, 74 Fed. 734; *Williams v. State*, 44 Ala. 41; *Handley v. State*, 96 Ala. 48, 38 Am. St. 81, 4 Ann. Cas. 760, 11 So. 322.)

Uncommunicated threats are admissible on the issue as to which party brought on the conflict. (1 Wigmore on Evidence, sec. 10.)

A person charged with homicide is entitled to rely on proof of the desperate character of the deceased, and of special acts communicated to him indicating his dangerous character, as tending to show that he acted in self-defense. (*State v. Burton*, 63 Kan. 602, 66 Pac. 633; note, 3 L. R. A., N. S., 372; *State v. Davis* (N. M.), 234 Pac. 311; *State v. Dowen* (Kan.), 234 Pac. 46.)

It is improper in a homicide case, upon cross-examination, to ask the accused if he is not a bootlegger. (*Wooton v. Commonwealth*, 200 Ky. 588, 255 S. W. 153; *People v. Greenwall*, 108 N. Y. 296, 2 Am. St. 415, 15 N. E. 404; *State v. Gottfreedson*, 24 Wash. 398, 64 Pac. 523; *State v. Hale*, 156 Mo. 102, 56 S. W. 881; *Nix v. State* (Tex. Cr.), 74 S. W. 764; *State v. Sheppard*, 49 W. Va. 582, 39 S. E. 676; *Hall v. United States*, 150 U. S. 76, 14 Sup. Ct. 22, 37

L. ed. 1003; *State v. Roscum,* 119 Iowa, 330, 93 N. W. 295; *People v. Derbert,* 138 Cal. 467, 71 Pac. 564; *State v. Irwin,* 9 Ida. 35, 71 Pac. 608, 60 L. R. A. 716; *People v. Montgomery,* 176 N. Y. 219, 68 N. E. 258; *State v. Douglass,* 35 Ida. 140, 208 Pac. 236; *State v. Givens,* 28 Ida. 253, 152 Pac. 1054.)

An exception to the general rule excluding evidence as to the character of the deceased on trial for homicide exists in cases where the defendant admits the killing and claims to have acted in self-defense; and, as bearing on this issue, after laying a proper foundation, produces evidence of the turbulent and dangerous character of the deceased. (*Garner v. State,* 28 Fla. 113, 29 Am. St. 232, 9 So. 835; *People v. Tracy,* 1 Utah, 343; *Williams v. State,* 14 Tex. App. 102, 46 Am. Rep. 237; *Pritchett v. State,* 22 Ala. 39, 58 Am. Dec. 250; note, L. R. A. 1916A, 1245.)

An officer making an arrest has no right to use more force than is reasonably necessary to subject the person sought to be arrested to his authority; and, where he goes further and uses unnecessary force, the relations between the parties become the same as those between private individuals; and, if the person sought to be arrested believes, or has reason to believe, that he is in danger of being killed, or of receiving great bodily harm, he may defend himself, repelling force with force, to the extent of slaying the officer when necessary to save his own life, or save himself from serious bodily harm. (*Williams v. State,* 44 Ala. 41; *Appleton v. State,* 61 Ark. 590, 33 S. W. 1066; *Plummer v. State,* 135 Ind. 308, 34 N. E. 968; *Bullock v. State,* 65 N. J. L. 557, 86 Am. St. 668, 47 Atl. 62; *Vann v. State,* 45 Tex. Cr. 434, 108 Am. St. 961, 77 S. W. 813.)

Where an officer arrests a person without lawful authority, it constitutes an illegal assault which may be resisted; and if the death of the person seeking to make the arrest results from the resistance, it is excusable homicide. (*Roberson v. State,* 43 Fla. 156, 29 So. 535, 52 L. R. A. 751; *Creighton v. Commonwealth,* 83 Ky. 142, 4 Am. St. 143; *Simmerman v. State,* 14 Neb. 568, 17 N. W. 115; *Cortez v. State.* 44 Tex. Cr. 169, 69 S. W. 536; *Earles v. State* (Tex.), 94 S. W. 464.)

In the absence of proof of malice aforethought, a conviction of murder in the second degree cannot be sustained. (*State v. Buster,* 28 Ida. 110, 152 Pac. 196.)

Although the instructions given by the court in a criminal prosecution present the theory of the prosecution and state the law thereon without error, the defendant is entitled to have the law declared in reference to the facts which he contends the evidence reasonably tends to show, and to instructions defining the law as applicable to his defense. (*Driggers v. United States,* 21 Okl. 60, 129 Am. St. 823, 17 Ann. Cas. 66, 95 Pac. 612; *State v. Grugin,* 147 Mo. 39, 71 Am. St. 553, 47 S. W. 1058, 42 L. R. A. 774; 14 R. C. L., 799.)

An incorrect instruction in a case where the evidence is conflicting is not cured by a correct one, since it is impossible to determine which instruction the jury followed. (*People v. Harvey,* 286 Ill. 593, 122 N. E. 138; *People v. Strause,* 290 Ill. 259, 125 N. E. 339; *People v. True,* 314 Ill. 89, 145 N. E. 198; *State v. Rogers,* 30 Ida. 259, 163 Pac. 912.)

A. H. Conner, Attorney General, and John W. Cramer, Assistant, for Respondent.

The dismissal of a criminal complaint before the committing and discharge of a defendant, before an information is filed in the district court, is not a ground upon which to base a motion to quash the information. (C. S., sec. 8863.)

Former acquittal or once in jeopardy must be taken by plea and cannot be raised by motion to quash. (C. S., secs. 8879, 8880.)

The nature and extent of inquiries which may be made on preliminary examination of jurors is largely within the discretion of the trial court, the exercise of which will not be reversed except in case of abuse. (*State v. Hoagland,* 39 Ida. 405, 228 Pac. 314; *State v. Pettit,* 33 Ida. 326, 193 Pac. 1015; *State v. Douthitt,* 26 N. M. 532, 194 Pac. 879; *State v. Turley,* 87 Vt. 163, 88 Atl. 562; 16 R. C. L. 247, 364.)

It is not error to question a juror regarding conscientious scruples against the infliction of the death penalty when the offense charged is punishable with death. (C. S., sec. 8930, subd. 9.)

Persons in actual possession of an office, where possession is acquiesced in for a considerable time by the public, are *de facto* officers, although they do not possess color of title. (*Hussey v. Smith,* 99 U. S. 20, 25 L. ed. 314; *Nofire v. United States,* 164 U. S. 657, 17 Sup. Ct. 212, 41 L. ed. 588; *Williams v. Clayton,* 6 Utah, 86, 21 Pac. 398.)

A statement of a person a few moments after he had received a fatal shot that the defendant fired such shot was a part of the *res gestae,* and was properly received in evidence. (*State v. Wilmbusse,* 8 Ida. 608, 70 Pac. 849; *State v. Yee Wee,* 7 Ida. 188, 61 Pac. 588.)

Voluntary statements made by a defendant at the time of and while under arrest, not shown to have been made or induced by any promise or hope of benefit to accrue to him therefrom, may be proved on the trial. (*State v. Ellington,* 4 Ida. 529, 43 Pac. 60; *People v. Sampo,* 17 Cal. App. 135, 118 Pac. 957.)

Error, if any, in admitting irrelevant or improper testimony is usually harmless, where the fact which is intended to be proved thereby is fully shown by other evidence which was introduced without objection. (*State v. Breyer,* 40 Ida. 324, 232 Pac. 560; 17 C. J., 321, sec. 2664, note, 48.)

Where errors are assigned, if they are not discussed in the brief and no authorities are cited in support of the assignments, they will neither be reviewed, considered nor discussed by the court. (*State v. Brockman,* 39 Ida. 468, 228 Pac. 250; *State v. Lundhigh,* 30 Ida. 365, 164 Pac. 690.)

Warrants of arrest are admissible to establish that deceased officer was acting within the scope of his duty when killed. (*Palmer v. People,* 138 Ill. 356, 32 Am. St. 146, 28 N. E. 130; *Boyd v. State,* 17 Ga. 194; *State v. Spaulding,* 34 Minn. 361, 25 N. W. 793.)

Where an officer having authority to arrest another proceeds to discharge his duty in a proper manner and is re-

sisted so violently that his death results, the killing will be deemed to be murder. (*Croom v. State*, 85 Ga. 718, 21 Am. St. 179, 11 S. E. 1035; *Rafferty v. People*, 69 Ill. 111, 18 Am. Rep. 601; *Roberts v. State*, 14 Mo. 138, 55 Am. Dec. 97; *Brown v. State*, 109 Ala. 70, 20 So. 103; notes, 66 L. R. A. 354; 4 Ann. Cas. 841; *Dietz v. State*, 149 Wis. 462, Ann. Cas. 1913C, 732, 136 N. W. 166.)

The law clothes an officer in making an arrest with power to accomplish that result, and imposes upon him the duty to overcome all resistance, the means being coextensive with the duty. (*State v. Fuller*, 96 Mo. 165, 9 S. W. 583; C. S., sec. 8733.)

The character of the deceased officer is immaterial even when self-defense is relied upon, because the defendant has no right to resist a lawful arrest. (*State v. Albright*, 144 Mo. 638, 46 S. W. 620; *State v. Evans*, 161 Mo. 95, 61 S. W. 590.)

That an officer seeking to make an arrest, who was killed in the attempt, was an officer *de facto*, and not *de jure*, or that he was known and recognized in the community as such officer is sufficient, as a general rule, to render the crime of killing him nothing less than murder. (*State v. Holcomb*, 86 Mo. 371; *Weatherford v. State*, 31 Tex. Cr. 530, 21 S. W. 251, 66 L. R. A. 357, note.)

Assignments of error involving the action of the court in overruling an objection to the introduction of evidence, and its rulings thereon, are not reviewable upon appeal when no exception was taken thereto. (*State v. Brockman*, 39 Ida. 468, 228 Pac. 250; *State v. White*, 33 Ida. 697, 197 Pac. 824.)

All the instructions must be considered and construed together, and though an individual instruction, standing alone, would appear to be improper, if the instructions as a whole correctly state the law, the judgment will be affirmed. (*State v. Cosler*, 39 Ida. 519, 228 Pac. 277; *State v. Dong Sing*, 35 Ida. 616, 208 Pac. 860.)

It is not error for the court to instruct the jury that there need be no appreciable space of time between the intention

to kill and the act of killing, that they may be as instantaneous as successive thoughts of the mind. (*State v. Shuff*, 9 Ida. 115, 72 Pac. 664.)

Where one has a right to arrest another, the other has no right to resist such arrest, since the two rights cannot coexist; and where a person thus having the right to arrest another is killed by the latter in the resistance of such arrest, the resistance is a crime, and the killing is a homicide in the commission of an unlawful act. (*State v. Albright*, 144 Mo. 638, 46 S. W. 620; *State v. Cushenberry*, 157 Mo. 168, 56 S. W. 737; 13 R. C. L., 867.)

It is not error for the trial court to refuse to give an instruction where the same subject matter is fully and clearly covered by other instructions given by the court. (*State v. Fleming*, 17 Ida. 471, 106 Pac. 305.)

A general assignment of error, without any specification of particulars wherein it is claimed that the verdict or judgment is against the evidence or contrary to law, is too indefinite to be considered, and an appellate court will not consider such assignment or search the record in order to ascertain whether such a general specification is well founded. (*State v. Johnson*, 39 Ida. 440, 227 Pac. 1052.)

J. Wesley Holden, Alvin Denman, W. P. Hanson, Kenneth S. Mackenzie, Harry Holden, James S. Byers, H. Mark Earl, E. A. Owen, Arthur W. Holden, Joshua T. Evans, Solon Orr, Bash L. Bennett, C. W. Morrison, and Wm. P, Hemminger, *Amici Curiae.*

No evidence of new matter, whether damaging or not, should be allowed on rebuttal, except under the provisions of the statute. (C. S., sec. 8941, par. No. 4; *State v. Mushrow*, 32 Ida. 564.)

The right to impeach an adversary's witness in any manner permitted by statute is absolute, and not discretionary. (C. S., sec. 8038; *State v. Mushrow, supra;* 40 Cyc. 2557–2594; *State v. Trego*, 25 Ida. 625, 138 Pac. 1124; *People v. White* (Cal.), 75 Pac. 828.)

Where self-defense is pleaded in a prosecution for homicide the burden of proof is on the state to show that the

Opinion of the Court—Givens, J.

defendant in taking life did not act in self-defense. (19 L. R. A., N. S., 485, note.)

The burden of proof never shifts. (*State v. Rogers* (Ida.), 163 Pac. 912.)

The court erred in instructing the jury that defendant and appellant must clearly establish justification for the shooting. (*People v. Shantley*, 49 App. Div. 56, 63 N. Y. Supp. 449; *Alexander v. People*, 96 Ill. 96; *Plummer v. State*, 135 Ind. 308, 34 N. E. 968, 19 L. R. A., N. S., 485.)

The court erred in not instructing the jury that an officer cannot shoot or kill one he attempts to arrest on a mere misdemeanor warrant. The statute having stated when an officer may shoot and kill has excluded all other cases. (C. S., sec. 8218; *State v. McGehee* (Mo.), 274 S. W. 70; *Hickey v. Commonwealth* (Ky.), 215 S. W. 431.)

GIVENS, J.—Appellant on a charge of first degree murder was convicted of murder in the second degree.

Neil Simpkins, a deputy sheriff of Bonneville county, went to the residence of appellant in Idaho Falls with warrants to arrest him. He was met at the door of appellant's house by appellant's wife, who informed him that appellant was not there but would be back in a few minutes. She then asked him what he wanted appellant for, and he informed her he had a warrant of arrest for him on a liquor charge. She thereupon informed the deputy that she would send her husband down to the sheriff's office when he returned and the deceased said she need not bother, that he would come and get appellant. Thereupon Simpkins drove away from the house but returned in about ten or fifteen minutes. While Simpkins was gone appellant returned and his wife informed him that Simpkins had been there with a warrant of arrest for him on a liquor charge and instructed him to go down to the sheriff's office. Appellant left the house and got into his car, the car being in the garage; at about this time Simpkins drove up to the end of the driveway, extending from the garage to the street. The deceased got out of his car, shut the door and proceeded

41 Idaho—40

up the driveway toward the garage, where he met Mrs. Wilson, who angrily tried to stop him and asked him what he intended to do, and he said he was going to take appellant to jail. Deceased either had his gun or secured it from his car and further words and altercations and a physical encounter occurred between the deceased and Mrs. Wilson, it being claimed that threats were made by Mrs. Wilson against the deceased and that the deceased cursed Mrs. Wilson and knocked her down, after which he proceeded toward the car which appellant was backing out of the garage. Simpkins had previously had his papers in his hand, and he yelled to appellant, "Stop that car!" The car not stopping, Simpkins stooped over and fired one or two shots toward the rear of the car, one shot going into the gas-tank; he then stepped around the car to the right and appellant claims aimed his gun at him; meantime appellant had crouched down and secured his pistol from the right-hand pocket of the front door of his car and on raising up and, as he claims, seeing the deceased aiming at him, shot the deputy, from which wounds Simpkins shortly after died. After Simpkins was shot his pistol, an automatic, was picked up with an empty shell lodged in it with the muzzle end of the shell flipped up and the rim caught between the breach-block and the base of a shell partly in the barrel.

Appellant after the shooting continued down the driveway and fled out of town and some days thereafter was, without further resistance, arrested by a posse.

A preliminary examination was held and the appellant was bound over to the district court. Thereafter the prosecuting attorney asked leave not to file an information, which request was, by the district judge, granted and the appellant discharged without prejudice. Subsequently other preliminary examinations were held and the appellant bound over to the district court and an information filed. The action against Mrs. Wilson, previously jointly charged with appellant, was dismissed. Appellant made a motion to quash the information filed because no order for resub-

mission was made in accordance with C. S., sec. 8866. That section does not apply herein because no information had been filed. The action was dismissed without prejudice; the entire transaction relieved the prosecutor from filing an information based on the preliminary examination already held, but did not constitute a bar to the holding of another preliminary examination, or the filing of an information based upon such subsequent preliminary examination.

Challenges for cause were interposed to various jurors, on various grounds. The transcript does not contain a complete examination of these jurors on the disputed grounds of qualification; therefore the rulings will not be presumed erroneous. Counsel for appellant urges that it is immaterial against whom the juror had a prejudice. A sufficient answer to this contention is C. S., sec. 8930, subd. 8, under which it could not be contended that if the prospective juror had an unqualified opinion that the accused was not guilty, a challenge for implied bias might be properly urged by the defendant; and under C. S., sec. 8932, in a challenge for actual bias it must be alleged that the juror is biased against the party challenging.

Subdivision 9 of C. S., sec. 8930, became the law of Idaho in 1864. Prior to 1911 punishment for murder in the first degree was hanging. In 1911, C. S., sec. 8212, was amended and the punishment for murder in the first degree was fixed at death or life imprisonment, and the jury given the right to decide which punishment should be inflicted. Therefore, under C. S., sec. 8930, prior to 1911, a prospective juror who had conscientious scruples against the infliction of the death penalty could not, of course, find a person guilty of murder in the first degree without violating such scruples. Since 1911, however, a person having such conscientious scruples might find a person guilty because of the option between different punishments, and inflicting a life sentence would not do violence to such scruples. It is contended that subdivision 9 of C. S., sec. 8930, disqualifies a prospective juror only when his conscientious scruples would preclude his finding the defendant guilty, and since this

section was not amended at the time C. S., sec. 8212, was amended, it would appear that the legislature did not intend that such conscientious scruples would be ground for challenge in and of themselves, but only where they would prevent the juror from finding the defendant guilty. On, the other hand, to permit a juror who had conscientious scruples against the infliction of the death penalty to sit would mean that in no event could the death penalty be inflicted by the juror without violating his scruples; consequently the jury would not be able to fully and freely exercise their discretion in deciding upon the penalty; therefore the conclusion is inevitable that a prospective juror who has conscientious scruples against the death penalty is not qualified to sit as a juror where the charge is murder in the first degree.

The appellant contends that the deceased was not qualified to be a deputy sheriff and that consequently he had no right to arrest the defendant. While the record is not altogether clear on this phase it appears that the deceased was the son of foreign-born parents and his father's citizenship was not proved, and that while deceased had filed his first papers he had never perfected his application to become a citizen and was not a citizen of the United States of America; it appears he had been duly and regularly appointed and was acting as a deputy sheriff and accepted as such in the community and known to the appellant to be such; under these circumstances he was a *de facto* officer. (*Morford v. Territory,* 10 Okl. 741, 63 Pac. 958, 54 L. R. A. 513; *Ekern v. McGovern,* 154 Wis. 157, 142 N. W. 595, 46 L. R. A., N. S., 796; *Nofire v. United States,* 164 U. S. 657, 17 Sup. Ct. 212, 41 L. ed. 588; *Hussey v. Smith,* 99 U. S. 20, 25 L. ed. 314; *People v. Cradlebaugh,* 24 Cal. App. 489, 141 Pac. 943; *City of Ardemore v. Sayre,* 54 Okl. 779, 154 Pac. 356.)

Certain witnesses testified that a short time after the shooting the deceased told who shot him. At the time the deceased was described as being very pale, short of breath, and in great pain and agony, with purple lips; that he

would say a word or two and then stop and answer in monosyllables, and was badly bloated. It further appears that the deceased stated: "Bill Wilson shot me, over by the garage, three or four times"; and he said to the witness Bodie, who among others testified as to the deceased's condition and statements, "You won't leave me, will you, Dave? I am dying," and that he asked the witness to help him up, who, as he stooped down to do so, was told by Dr. Kline, attending physician, not to, as he was going to give him a hypodermic injection in the arm. The testimony shows that this conversation took place within a few minutes after the shooting, when deceased evidently believed he was dying, and was therefore admissible as a dying declaration. (*State v. Yee Wee,* 7 Ida. 188, 61 Pac. 588; *State v. Fong Loon,* 29 Ida. 248, 158 Pac. 233, L. R. A. 1916F, 1198.)

Error is predicated on the admission of certain statements made by defendant while in custody. These statements were shown to have been made voluntarily by defendant, not under coercion or induced by any threat, nor with the promise of benefit to accrue or leniency, and were admissible. (*State v. Ellington,* 4 Ida. 529, 43 Pac. 60.)

Where the appellant had testified on cross-examination without objection that the deceased had searched his place several times, it was not prejudicial error to ask appellant if the officer had made such search with the required search-warrants, or to compel an answer to such question.

During the cross-examination of the defendant, who testified in his own behalf, over his objection he was compelled to answer, which he did in the negative, the following question:

"Isn't it a fact that you have been engaged in selling liquor and had been engaged in selling liquor prior to June second, 1924, for several years."

The defendant previously on direct examination in testifying concerning his relations with the deceased, to show ill-feeling between the two, had stated that before, during a

search of his premises, alcohol had been found thereon and that he had been arrested in connection therewith but later discharged. In view of this testimony and the circumstances it can hardly be said that the above question answered in the negative by the defendant was so foreign to and disconnected from the previous testimony of the defendant as to make it prejudicially erroneous, it being distinguishable in this regard from *Nix v. State* (Tex. Civ. App.), 74 S. W. 764. If the defendant had not previously admitted that alcohol had been found in his home and the circumstances of his arrest therefor, this question would have been improper and prejudicial, but under the condition of the evidence and the circumstances herein it would not justify a reversal.

Appellant attempts to justify his actions on the ground that the deceased had no right to use a deadly weapon and that he used more force than was necessary in seeking to arrest appellant, and that he shot the deceased in self-defense.

When the arrest is being made by an officer under the authority of a warrant, after information of the intention to make the arrest, if the person to be arrested either flees or forcibly resists, the officer may use all necessary means to effect the arrest. An officer making an arrest has the right to use such force as is necessary to subject the person sought to be arrested to his authority, but the officer may not kill a misdemeanant in arresting him; and if the officer uses unnecessary force the relations between the parties become the same as those between private individuals; and if the person sought to be arrested believes, or has reason to believe, that he is in danger of being killed, or of receiving great bodily injury, he may defend himself, repelling force with force, to the extent of slaying the officer when necessary to save his own life, or save himself from serious bodily harm. (*Plummer v. State,* 135 Ind. 308, 34 N. E. 968; *Coldeen v. Reid,* 107 Wash. 508, 182 Pac. 599; *Harding v. State,* 26 Ariz. 334, 225 Pac. 482; note, 4 Ann. Cas. 760; *State v. Smith,* 127 Iowa, 534, 4 Ann. Cas. 758, 103 N. W.

944; *Lane v. Butler*, 225 Ill. App. 382; *People v. Klein*, 305 Ill. 141, 137 N. E. 145; *Rawlings v. Commonwealth*, 191 Ky. 401, 230 S. W. 529; *Terrell v. Commonwealth*, 194 Ky. 608, 240 S. W. 81; *Christian v. State*, 71 Tex. Cr. 566, 161 S. W. 101; *Appleton v. State*, 61 Ark. 590, 33 S. W. 1066; *Bullock v. State*, 65 N. J. L. 557, 86 Am. St. 668, 47 Atl. 62; *Vann v. State*, 45 Tex. Cr. 434, 77 S. W. 813; 30 C. J. 77.) It is to be borne in mind that this is not a case of an officer killing a defendant in seeking to arrest him for a misdemeanor, who is then called upon to justify such action, but is a case where the defendant is attempting to justify his slaying an officer on the ground of self-defense, where the officer was making some use of a firearm and seeking to arrest the defendant, the defendant knowing the officer to be such and that he had a warrant.

Where self-defense is interposed and it appears that there was a more or less mutual combat between the parties, the reputation of the deceased for being turbulent, quarrelsome and dangerous, if communicated to the appellant prior to the affray, is admissible as bearing upon the question of who was the probable aggressor and whether or not the appellant had reasonable cause to believe that his life was in danger. (30 C. J. 229; *People v. Dugas*, 310 Ill. 291, 141 N. E. 769.) This rule, however, may not be extended to include specific acts. (30 C. J. 233.)

Appellant sought to show certain previous violent actions on the part of the deceased as justifying his fear and reasonable apprehension of danger. This offer was refused, especially where based on hearsay statements only. The defendant was permitted to testify without objection quite fully as to certain specific acts of violence which he himself had seen the deceased commit, and the evidence which was not admitted was merely cumulative; and while a part of the offer of proof was refused, the part thereof relating to what the defendant had heard of particular acts of violence committed by the deceased was admitted, the defendant himself stating that he could not remember the name of

anyone in particular but that it was the general talk among most everybody; furthermore, where an offer of proof includes inadmissible matter, which this offer did, it is not erroneous to sustain an objection to the entire offer. (*Bressan v. Herrick*, 35 Ida. 217, 205 Pac. 555.)

Appellant urges that the court erred in permitting the witness Fowler to testify over objection that the defendant had threatened the deceased as follows:

"A. We was talking about Neil Simpkins coming down into the other county and getting me, and Mr. Wilson said it looked like he had enough to take care of in this county, and Wilson said he didn't want him to come and take him.

"Q. Are these the exact words he used?

"A. As near as I can remember."

If the threat thus made was as indefinite and remote as contended for by appellant it was harmless. If it could have been considered as a threat, it was relevant and material and competent as bearing upon whether or not the appellant, in shooting the deceased, was actuated only by apprehensions for his personal safety or whether he was in a murderous frame of mind seeking revenge.

On rebuttal George Wilson for the state testified to certain statements made by Mrs. Wilson immediately prior to the time of the homicide. On surrebuttal appellant was denied the opportunity, by objection interposed by the state, to impeach this witness by proof of bad reputation for truth and veracity. George Wilson was one of the main witnesses for the state, an eye-witness of the tragedy, had testified fully as to what he had seen and heard, and been cross-examined at length by counsel for defendant. After the state had rested the defendant did not offer or attempt to impeach George Wilson by showing bad reputation. The wife of the defendant denied on cross-examination that she had made certain statements to George Wilson, who was no relation to the defendant, and on rebuttal George Wilson was called by the state to contradict Mrs. Wilson as to such statements. This was the only testimony given by George Wilson on rebuttal, and while the foundation was

laid to impeach his testimony on this phase of the case, by contradictory statements, the defense did not follow it up, but sought on its rebuttal to impeach only by showing bad reputation. Such offered evidence of a bad reputation for truth and veracity would clearly have been admissible in defendant's case in chief, but in view of the testimony of George Wilson given in the state's case in chief and the limited scope of his testimony on being recalled, it is doubtful if the impeaching testimony offered by the defense was properly rebuttal under C. S., sec. 8941. A large discretion is reposed in the trial court with respect to the admission of evidence in rebuttal (*State v. Mushrow*, 32 Ida. 564, 185 Pac. 1075); and while it would not have been an abuse of discretion to have admitted this evidence, since no request was made that the defendant be allowed to reopen to put this evidence in (*State v. Waln*, 14 Ida. 1, 80 Pac. 221), we cannot say that the action of the trial court constituted such an abuse of his discretion as to authorize a reversal. (*Young v. Brady*, 94 Cal. 128, 29 Pac. 489, at 490.) It is evident counsel for the defense were under the impression that George Wilson had given this testimony when on the stand in the first place, because they objected to these statements during the latter part of his first examination on the ground of repetition; hence if they wanted to impeach it they should have done so in their case in chief. These statements had also been detailed by two other witnesses. This matter was addressed to the sound judicial discretion of the trial court, and since George Wilson had testified in plaintiff's case in chief, it does not appear to have been an abuse of such discretion to refuse his impeachment in surrebuttal.

Instruction No. 12 is complained of because the court defined malice as that condition of the mind which prompts one to do an unlawful act intentionally and to take the life of another without legal justification or excuse, appellant contending that in self-defense the defendant might intend to inflict an injury and still not be guilty. If the defendant were justified in inflicting the injury in self-defense he

would not be doing an unlawful act nor would he be acting without legal justification or an excuse; hence this definition was not incorrect.

Instruction No. 14 is complained of because it instructed the jury that no appreciable length of time need elapse between the intention to kill or premeditation and the killing. Such an instruction has heretofore been approved. (*State v. Dong Sing*, 35 Ida. 616, 208 Pac. 860.)

Instruction No. 21 justified the appellant if he had reasonable cause to apprehend on the part of the deceased "a *design* to do him some great personal injury." Complaint is made of this use of the word "design" apparently on the ground that appellant had the right to rely upon appearances and not upon an attempt to determine what was in the deceased's mind. While perhaps this instruction could have been better framed, we do not believe that the jury was misled by this word. It was clearly the purpose of this instruction to advise the jury that if they believed that the appellant had reasonable cause to believe that the deceased was about to inflict great bodily injury upon the appellant, the appellant had a right to defend himself. Further complaint is made of this instruction because it stated that the defendant was not justified unless there was reasonable cause for him to apprehend immediate danger. While the jury are to judge of the acts of the defendant from the situation he was then in, nevertheless the defendant's apprehensions must be reasonable in the light of the attendant circumstances, and this instruction was not erroneous. (*State v. Grover*, 35 Ida. 589, 598, 207 Pac. 1080; *State v. Beckner*, 194 Mo. 281, 91 S. W. 892, 3 L. R. A., N. S., 535; *Hanks v. State*, 99 Tex. Cr. 218, 269 S. W. 106, 110.) Furthermore this instruction was, as to this particular, amplified and made clear by instruction No. 22, as follows:

"The court instructs the jury that in deciding upon the guilt or innocence of defendant, the jury should determine what an ordinary and reasonable man might have fairly inferred from all the facts and circumstances by which the

evidence shows the defendant was at the time surrounded, and must not try the defendant in the light of subsequent evidence, nor must the jury require of the defendant the same cool judgment that the jury can now bring to bear upon the occurrence. The jury should put themselves, as far as possible, in the defendant's place, and then judge whether danger was apparent, or should have been considered apparent, by a man of ordinary caution and prudence in like condition. The danger of life or great bodily harm, need not have been real, present or urgent at the very moment of the killing but only apparently so. The question is, was the danger apparently so imminent and present at the time of the killing as a reasonable and prudent man, situated as the defendant was, would believe it was necessary to kill or inflict great bodily harm upon the deceased in order to avoid loss of his own life or to prevent great bodily harm being inflicted upon him; and if, from all the evidence in the case, the jury have a reasonable doubt whether such was the case when the defendant killed the deceased, then they must find the defendant not guilty.''

*Taylor v. Commonwealth*, 172 Ky. 136, 188 S. W. 1087, relied upon by appellant as showing that instruction No. 21 was erroneous, held that an instruction advising the jury that they could not acquit unless the killing was necessary and was believed by appellant in the exercise of a reasonable judgment to be necessary in order to protect himself, etc., was incorrect. In the case at bar instruction No. 21 did not advise that unless the killing was necessary and was believed by appellant in the exercise of a reasonable judgment to be necessary, but advised the jury that all that was necessary was that the defendant had reasonable cause to believe, and did believe, that the danger should have been impending and immediately about to fall, expressly stating in instruction No. 22 that all that was necessary was that a reasonable and prudent man in similar circumstances should have believed it necessary to defend himself, and the court further amplified the defendant's rights as follows in instruction No. 23:

"The court instructs the jury that the right of self-defense is derived from nature. To repel force by force is a common instinct of every creature that has means of defense. Sudden and strong resistance to unrighteous attack is not merely a thing to be tolerated—in many cases it is a moral duty. Municipal law has left to the individual the exercise of this natural right of self-defense in all cases in which the law is either too slow or too feeble to stay the hand of violence, and it is to be considered that a man repelling imminent danger cannot be expected to use as much care as if he had time to act deliberately''; which is certainly as favorable as anything contended for by the *amici curiae;* furthermore, these three instructions last considered were substantially in accordance with those requested by appellant.

Instruction No. 25 is complained of because it advised the jury that the killing being established, the burden was upon the defendant to show justification for the shooting. This portion of the instruction and also instruction No. 37 had apparently already been covered by instruction No. 10, and therefore the latter portion being the part complained of could well have been omitted, but was not prejudicial, since the court in instruction No. 16 instructed the jury that:

"While the burden of proving the circumstances in mitigation or justification of the homicide rests upon the defendant, he is not required to establish such facts by a preponderance of the evidence but only to establish the circumstances to such an extent that the jury, after considering the whole evidence in the case, may have a reasonable doubt of his guilt, that is, such a doubt as has been elsewhere in these instructions defined as a reasonable doubt.''

This instruction, in connection with the other instructions with regard to the obligation resting on defendant to justify the killing, the homicide being admitted, did not place the burden thereof upon the defendant other than in accordance with C. S., sec. 8952, *State v. Lundhigh,* 30 Ida. 365, 164 Pac. 690, and *State v. Rogers,* 30 Ida. 259, 163 Pac. 912,

where the court said that the defendant "is only bound to prove such circumstances as any fact is to be proved, and if the proof creates a reasonable doubt of the defendant's guilt, he is entitled to an acquittal, and the jury should be so instructed."

Instruction No. 27 is complained of because, where the jury are advised to consider all the circumstances, the words "appear in the case" were not added as limiting such circumstances. While it would have been proper to add these words it does not appear that the jury were necessarily misled by their omission.

Instruction No. 28 is complained of because there is no evidence showing first degree murder. If the appellant was not justified on the ground of self-defense, the jury might properly have concluded that he was guilty of murder in the first degree; hence this instruction was not erroneous.

Instruction No. 29 advised the jury that appellant was entitled to the benefit of what he had said in his own behalf in making certain extrajudicial statements before the trial, if the jury believed it to be true. This instruction giving undue prominence to the testimony of the defendant, since the only duty resting on the court was to admit or reject the evidence and this duty having been performed it was unnecessary to tell the jury that they might consider it, was erroneous, but being as favorable as unfavorable to defendant was not prejudicial, and is distinguishable from *State v. Rogers, supra.*

Instruction No. 36 was as follows:

"The court instructs the jury that in making an arrest, a peace officer is entitled to display, and if necessary, to use firearms, in order to compel the obedience to his lawful demands, and that the possession or use of firearms by such officer, in making an arrest, does not justify the party sought to be arrested in assuming that his life is in danger, or that he is exposed to great bodily harm, or justify him in resisting or killing such officer, and that the killing of such officer by the party sought to be arrested, cannot be justified on the grounds of self-defense, if the accused knew or had

reason to believe that such person was a peace officer, and that as such, he was only attempting to arrest the defendant, and in so doing using only such force as was necessary to accomplish the arrest."

C. S., sec. 8733, is as follows:

"When the arrest is being made by an officer under the authority of a warrant, after information of the intention to make the arrest, if the person to be arrested either flees or forcibly resists, the officer may use all necessary means to effect the arrest."

The evidence discloses that the officer had, on his first visit to defendant's home, told Mrs. Wilson that he had a warrant for the arrest of her husband and that on his return when approaching the car he in some manner exhibited the papers containing the warrant. It thus appears that he had made known his intention to arrest to the defendant's wife and she had told her husband of deceased's visit and his intention to arrest.

Counsel argues that appellant was justified in acting upon appearances and that he could presume that the exhibition of the gun by the deceased warranted him in believing that he was in danger of great bodily injury. The cases supporting such doctrine are taken almost entirely from Texas, and we have no statute authorizing such instruction; furthermore, if the defendant had a right to act upon appearances, so did the deceased (*Murphy v. Murray* (Cal. App.), 241 Pac. 938), who was an officer, *de facto* at least, and known by the defendant to be such an officer, armed with a warrant, seeking to make an arrest, as he had made known his purpose to defendant's wife and at a time when both defendant and his wife admitted they knew his purpose in being there, and when the wife of the defendant, as she herself admitted, was trying to keep deceased from going to the garage, impeding his progress with physical force, and when from the actions of the car in which the defendant was riding the jury certainly might have inferred that the deceased might reasonably have anticipated that defendant was seeking to avoid arrest and escape, which he in fact did.

"Had he informed Plummer that he intended to arrest him, and requested him to submit to such arrest, and then Plummer had refused to submit, and resisted, or threatened to resist, arrest, with any demonstration of force, a very different question would have been presented. In such a case the officer, as we have seen, having authority to arrest, would have been justified in using force sufficient and necessary to overcome such resistance, even to the taking of the life of the person he was attempting to arrest." (Where the officer was attempting to arrest for a misdemeanor.) (*Plummer v. State,* 135 Ind. 308, 34 N. E. 968.)

The middle portion of such instruction, if given alone or considered alone, would have been prejudicial and we do not approve it, but the latter portion of the instruction modified such middle part, so that we do not believe the jury was misled thereby, since all instructions are to be considered together, and the court had previously instructed the jury as follows:

"The court instructs the jury that the right to defend one's self against danger is the right which the law concedes and guarantees to all men. Therefore, the defendant may have killed Neil Simpkins and be innocent of any offense against the law, if, at the time he shot Neil Simpkins, and from which gun shot wound the said Neil Simpkins thereafter died, he had reasonable cause to apprehend on the part of the said Neil Simpkins, now deceased, a design to do him (the defendant), some great personal injury, or of taking the life of the said defendant, and there was reasonable cause for the defendant to apprehend immediate danger of such design being accomplished, and, to avert such apprehended danger, the said fatal shot was fired by the said defendant, then the shooting was not felonious, but was justifiable and you should acquit him. It is not necessary, to this defense, that the danger should have been impending and immediately about to fall on the defendant. All that is necessary is that the defendant had reasonable cause to believe, and did believe, these facts, but before you acquit on the ground of self-defense as outlined above, you ought

to believe that defendant's cause of apprehension was reasonable. Whether the facts constituting such reasonable cause have been established by the evidence, you are to determine; and unless the facts constituting such reasonable cause have been established by the evidence, you cannot acquit him on the ground of self-defense, even though you believe the defendant really thought he was in danger of great bodily harm, or of losing his life.''

This instruction together with the others in the case did not advise the jury other than in accordance with the above statute, the latter portion of the instruction particularly restricting the right of the officer within the terms of the statute. The instruction immediately under consideration was later followed by instruction No. 48 as follows:

''The court instructs you, gentlemen of the jury, that in every case where one person has a right to arrest another, the other can have no right to resist, since the two rights cannot co-exist; and where a person thus having the right to arrest another is resisted and killed by the latter, the resistance is a crime, and the killing is a homicide in the commission of an unlawful act, and no right of self-defense can arise out of such circumstances.''

Appellant complains of this because it took from the defendant the opportunity to claim self-defense and incorrectly stated the law. Certainly if an officer has the right to make an arrest no one has the right to resist, and the resistance is a crime as the instruction stated; and if he has no right to resist he certainly has no right to kill, and the killing, therefore, being unjustifiable, would be an unlawful homicide. No one instruction can state all the law of the case, and if the appellant was entitled to have instructions given which bore out his theory, the state had an equal right to have instructions bearing upon its theory of the case.

Instruction No. 47, advising the jury that it was not necessary to believe every fact or circumstance had been proven beyond a reasonable doubt, but that it was sufficient if the jury believed from the evidence in this case beyond a rea-

sonable doubt that the defendant was guilty as charged, was correct.

Instruction No. 50 was as follows:

"You are further instructed as a matter of law, that the only justification offered for the homicide in this case, which you are entitled to consider, is the claim of the defendant that the shooting was done in defense of his person."

Appellant objects to the use of the words "justification" and "claim," it being contended that the use of these words induced the jury to look upon the defense as interposed as without merit. This is placing a strained construction upon the words and we do not believe that the jury gained any such impression. (*People v. Dugas, supra.*)

All the instructions must be considered and construed together, and though an individual instruction, standing alone, would appear to be improper, if the instructions as a whole correctly state the law, the judgment will be affirmed. (*State v. Cosler*, 39 Ida. 519, 228 Pac. 277; *State v. Dong Sing*, 35 Ida. 616, 208 Pac. 860.) Under the above rule instructions Nos. 31, 38, 48, 51, 53 and 67 were not erroneous.

Appellant requested some eighteen instructions, the refusal of which by the trial court is charged as error. In the main, these have been covered by the discussion referring to the right of an officer to use firearms in arresting for a misdemeanor. Instruction No. 4 is the only one particularly mentioned in the brief. This instruction was properly refused, because it called attention to particular evidence and falls within the inhibition of *State v. Rogers, supra.* In the absence of further specification in appellant's brief as to these requested instructions, we find that the court did not err in refusing to give them.

There being no prejudicial error in the record and the evidence being amply sufficient to sustain the verdict, the judgment of the lower court is affirmed, and it is so ordered.

Wm. E. Lee and Budge, JJ., concur.

William A. Lee, C. J., and Taylor, J., dissent.

Petition for rehearing denied.