373 P.2d 755

Vern MUNDY and Eunice Mundy, husband and wife, Plaintiffs-Appellants,

v.

Ernest JOHNSON and Mabel H. Johnson, husband and wife, Defendants-Respondents.

No. 9041.

Supreme Court of Idaho.

July 19, 1962.

---

Cox, Ware, Stellmon & O'Connell, Lewiston, for appellants.

Clements & Clements, Lewiston, for respondents.

TAYLOR, Justice.

June 9, 1960, at about noon, on Thain road in Lewiston Orchards, Paula Mundy, daughter of plaintiffs (appellants) was struck and killed by an automobile owned by defendants (respondents) and driven by defendant Mabel H. Johnson. Thain road is a four-lane highway running in a generally north-south direction, bisecting Lewiston Orchards.

Mrs. Johnson was traveling south in the right-hand of the two lanes provided for south bound traffic at a speed of from 20 to 25 miles per hour. The permissible speed was 35 miles per hour. As she approached an intersection there was on the east side of Thain road to her left a Nazarene church, where a group of children had just been released from Bible school, and there were a number of children on the church ground and on the adjacent sidewalk, moving south. A little farther south and on the west side of Thain road, was a service station. There were two signs near the sidewalk adjacent to the north edge of the service station property, and a parked car on the service station lot. These objects were in such position as to obstruct the view, of certain portions of

the service station area, of a driver moving south on Thain road. . As the car approached the service station, the child ran out from the service station lot into the street, where she was struck by the car. There was no witness to the impact. Mrs. Johnson testified she saw no children on her right on the west side of the street, nor at the service station, and that she did not see the deceased until she was running in the street; that the child suddenly appeared from the area where the parked car and sign were located. On the date of the accident Paula Mundy lacked 17 days of being five years old.

Upon trial the jury returned a verdict for defendants, upon which judgment was entered and plaintiffs brought this appeal.

Plaintiffs assign as error the refusal of the trial court to strike from the answer the allegation of contributory negligence; the refusal of the court to charge the jury that a child of five years is incapable of contributory negligence; and in submitting to the jury the issues as to whether the child was capable of negligence; and as to whether or not she was contributorially negligent. These questions were submitted to the jury by instruction no. 6, as follows:

"You are instructed that a child of the age of Paula Mundy is ordinarily presumed by law to be incapable of negligence. However, though age is an important factor to be considered in determining whether or not a child is capable of exercising care on its own part, it is not the only factor to be considered. The capacity, discretion, knowledge and experience of the particular child are predominant elements in determining the question of the child's negligence, and intelligence rather than age is the controlling test in determining the degree of care required of a child to avoid personal injury. In other words, the child is chargeable with that degree of care reasonably proportionate to a child his age and capacity.

"Whether or not Paula Mundy was contributorily negligent as in these instructions defined, must, by you be determined from all of the particular facts and circumstances surrounding the accident in question, and the child's knowledge, capacity, experience, maturity and intelligence."

There was evidence that Paula was a bright, "very smart," and alert child, more so "than the average child of her age;" that she was attentive to instruction; that she had been warned by her parents of the danger involved in crossing streets; and had been observed exercising caution in so doing; that she with her sister and brother had walked to and from the school, about a mile from her home, several times prior

to the accident; and that she had been warned by her teacher at the Bible school, the morning of the accident, not to go into the street.

█ The submission of the issue of contributory negligence was not error. The age at which a child reaches such maturity as to be chargeable with contributory negligence is an issue upon which there has been great divergence of opinion among the various jurisdictions. Illinois early held that a child under the age of 7 was conclusively presumed to be incapable of negligence; while Massachusetts held that as to children under 7 the issue was one for the jury under proper instructions.

In Eckhardt v. Hanson, 196 Minn. 270, 264 N.W. 776, 107 A.L.R. 1, the Minnesota court held that the question of whether a child 6 years of age was capable of negligence was for the jury. Concerning the two rules, the court said:

"Under a proper instruction the Massachusetts rule is the more sound and the one most likely to insure just result. It does not cast upon the general public any and all risks that may be created by the carelessness of a child. Still it does not go so far as to hold a child to a degree of care not commensurate with its age and experience. * * * Jurors, by virtue of their office, are competent to judge whether or not a child has exercised a degree of care commensurate with its age, capacity, and understanding. The Illinois rule has no basis in sound reason or logic. It is based upon an outworn historical rule of criminal law which refused to acknowledge any capacity on the part of any child under seven years of age to distinguish between right and wrong." 107 A.L.R. at page 4.

The general rule as to the responsibility of a child for contributory negligence is set forth by the annotator in 107 A.L.R. 7, towit:

"It is a well-settled general rule that an infant, at least until he has reached the later years of infancy, is not bound to exercise the care required of an adult, and that the standard by which to measure his conduct, as regards the question of contributory negligence, is that ordinarily exercised by children of the same age, capacity, discretion, knowledge, and experience, under the same or similar circumstances."

and, on page 8:

"The converse of the above proposition is equally true; namely, that infancy will not preclude the defense of contributory negligence, if the injured infant failed to exercise the care ordinarily exercised by children of the same age, capacity, discretion, knowledge,

and experience, under the same or similar circumstances."

The Supreme Court of the United States said:

" '* * * Of a child of three years of age less caution would be required than one of seven; and of a child of seven less than one of twelve or fifteen. The caution required is according to the maturity and capacity of the child, and this is to be determined in each case by the circumstances of that case.' Washington & G. R. Co. v. Gladmon (1872) 15 Wall. (U.S.) 401, 21 L.Ed. 114." 107 A.L.R. Anno. at page 7.

On pages 168 to 172 of the foregoing annotation, the annotator has collected cases from various jurisdictions holding that the question of the capacity of very young children (5, 6 and 7 years) is one of fact for the jury. In a supplemental annotation, 174 A.L.R. 1123 to 1125, subsequent cases involving 5-year old children are collected.

In Asumendi v. Ferguson, 57 Idaho 450, 65 P.2d 713, this court held it was proper to instruct the jury that a child of 2 years and 3 months was incapable of contributory negligence, although, in that case the negligence of the child was not urged or relied upon as a defense.

In Anderson v. Great Northern Ry. Co., 15 Idaho 513, at 527, 99 P. 91, this court tacitly approved an instruction containing the following:

" '* * * A child of four years is presumed to be incapable of undertaking ordinarily the dangers and perils incident to the walking upon the railroad track. Children of very tender age are conclusively presumed to be incapable of exercising care and judgment to avert injury from themselves, and, as a matter of law, contributory negligence is not imputable to them.' "

In Bennett v. Deaton, 57 Idaho 752, 68 P.2d 895, it was held that contributory negligence of a child (record indicates 13 years of age) was for the jury.

In Laidlaw v. Barker, 78 Idaho 67, 297 P.2d 287, a boy of 13 was held contributorily negligent as a matter of law; and in Shirts v. Shultz, 76 Idaho 463, 285 P.2d 479, the same ruling was made concerning the conduct of a boy 16 years of age

The authorities are in general agreement that age alone is not the determining factor; other elements must be considered.

" * * * it is generally held that, although age is an important factor to be considered in determining whether a child is capable of exercising any care, it is not the only factor to be considered. Hence, whether a child has such capacity is to be determined in each case by considering not only its age, but also all other factors bearing on its capacity, such as its intelligence, experience, such as, under particular cir-

cumstances, its discretion, previous training, maturity, alertness, and the nature of the danger encountered. Furthermore, in the absence of evidence showing a lack of the normal capacity of one of its years to exercise care, a child may be of such an age as to be held capable of exercising care for its own safety, so as to be chargeable with contributory negligence. Thus, it has been held that a child under seven may be charged with contributory negligence, and that a child may be guilty of contributory negligence, although at the time of its injury it was between six and seven years old, between five and six years old, less than six years of age, and between four and five years old." 65 C.J.S. Negligence § 145, pp. 786, 787.

"The care which a child is bound to exercise to avoid the charge of negligence in respect of precautions for its own safety depends not simply on its age, but more fundamentally on its knowledge, capacity, experience, maturity, and intelligence. The law does not disregard variations in capacity among children of the same age, in passing on questions of contributory negligence of children. The question is not whether the child whose conduct is in question acted as an ordinarily prudent child of its age would have acted, but whether it acted as a child of its age and of its capacity, discretion, knowledge, and experience would ordinarily have acted under the same circumstances. * * * While in the majority of cases the courts have regarded a four-year-old child as incapable of contributory negligence under any circumstances, other decisions hold that the presumption of incapacity in a child of this age is only prima facie in character, and that it may be found guilty of such negligence. The same is true in respect to a five-year-old child; some courts have held that a child of this age is incapable of contributory negligence, as a matter of law, while others have held or assumed that it may be found to possess the capacity requisite to make it guilty of contributory negligence." 38 Am.Jur., Negligence, § 205, pp. 888, 889, 890.

In Mecchi v. Lyon Van & Storage Co., 38 Cal.App.2d 674, 102 P.2d 422, 104 P.2d 26, and in Carrillo v. Helms Bakeries, 6 Cal.App.2d 299, 44 P.2d 604, it was held proper to submit to the jury the question of the capacity of a child of 5 years.

In Jones v. Wray, 169 Cal.App.2d 372, 337 P.2d 226, it was held that the trial court properly refused an instruction that a child of 5 years and 3 months could not be guilty of contributory negligence.

The Supreme Court of California, in Daun v. Truax, 56 Cal.2d 647, 16 Cal.Rptr.

351, 365 P.2d 407, held that a girl of 5 years, 8 months, could be guilty of contributory negligence, and in Courtell v. McEachen, 51 Cal.2d 448, 334 P.2d 870, at 873, the California court said:

> "The questions whether a child was capable of exercising care to avoid the particular danger encountered and whether, if so, the child failed to exercise due care, thereby contributing to the injury, are normally for the trier of fact to determine. Cahill v. E. B. & A. L. Stone Co., 167 Cal. 126, 139, 138 P. 712. In keeping with this rule courts have rejected the theory that a child of plaintiff's age, namely, between five and six, is incapable of contributory negligence as a matter of law. Smith v. Harger, 84 Cal.App.2d 361, 370, 191 P.2d 25; Carrillo v. Helms Bakeries, 6 Cal.App.2d 299, 304, 44 P. 2d 604."

In Boyett v. Airline Lumber Co., Okl., 277 P.2d 676, the court held that the capacity for contributory negligence of a child of 4½ years is ordinarily for the jury.

In Altieri v. D'Onofrio, 21 Conn.Sup. 1, 140 A.2d 887, the court held that instructions submitting to the jury the issue of contributory negligence of a boy of 5 years and 8 months was proper, and quoted from Wright, Connecticut Law of Torts, p. 106, as follows:

> "'It has been held by the Connecticut Supreme Court of Errors that a child of five and one-half years could be negligent, and that he should be required to use "such care as may reasonably be expected of children of similar age, judgment and experience." [Marfyak v. New England Transportation Co., 120 Conn. 46, 50, 179 A. 9]. And it was indicated in one case that a child of four might possibly be contributorily negligent. [Colligan v. Reilly, 129 Conn. 26, 28, 26 A.2d 231].'" 140 A.2d at 889.

The Minnesota court in Bruno v. Belmonte, 252 Minn. 497, 90 N.W.2d 899, held that a child of 5 years may be guilty of contributory negligence and the issue was properly submitted to the jury.

In Dillman v. Mitchell, 13 N.J. 412, 99 A.2d 809, where the New Jersey court was concerned with a charge of contributory negligence against a boy of 5½ years, it was said:

> "An exhaustive and able opinion on this question was written by Judge Jayne for the Appellate Division in Hellstern v. Smelowitz, 17 N.J.Super. 366, 86 A.2d 265, 271 (App.Div.1952), with which we are in entire accord. It was there stated: 'We resolve that the arbitrary rule which specifies that an infant under seven years of age is conclusively presumed to be incapable of

contributory negligence does not exist in the law of this State.' Nor should it. The age of a child does not alone determine its capacity to care for itself and avoid dangers, and the law should not arbitrarily fix an age at which the duty to exercise some care begins. If reasonable men might differ as to the capabilities of an infant to understand, appreciate and avoid dangers to which he is exposed, then whether or not he was guilty of contributory negligence in the circumstances becomes a jury question." 99 A.2d at 811.

In Doyen v. Lamb, 75 S.D. 77, 59 N.W.2d 550, the court held that the question of contributory negligence of a boy of 5 years, 10 months, who darted into the street from between two parked cars was for the jury, and further said:

"* * * The child was a normal, healthy, intelligent child. He had been instructed about the danger of getting into the street when in town and his mother testified that he understood and 'appreciated' such instructions." 59 N. W.2d at 552.

In Mann v. Fairbourn, 12 Utah 2d 342, 366 P.2d 603, the court held that child of 5½ years is not incapable of contributory negligence and that the question of capacity or incapacity of a child for contributory negligence is a factual inquiry to be determined as any other question of fact.

Determination of the capacity of children for care and caution does not call for scientific or technical analysis. It is a practical question within the everyday experience of the men and women who compose our juries. They are familiar with the impulsive tendencies, characteristics and predilictions of children. They are fully capable of resolving such issues, and the determination thereof may safely be committed to them.

Plaintiffs assign as error the failure of the court to include in its instruction no. 1, which outlines the contentions of the parties, the three items of negligent conduct on the part of Mabel Johnson, principally relied upon by plaintiffs, namely: (1) She did not give proper heed to the presence of children along the street; (2) She drove her car along the extreme right or west edge of the four-lane highway; (3) She did not sound her horn or give any other notice of her approach. These elements, along with others, were particularized in the pretrial order, and while the instruction could have been more detailed, it did contain general statements involving these issues, and when considered with other instructions dealing with these particular elements, we think it was sufficient.

The duty of the driver, Mrs. Johnson, under the circumstances involved, was in

part covered by instructions 12 [1], 13 [2], and 16 [3].

Instruction no. 1 advised the jury of plaintiffs' contention that Mrs. Johnson "failed to keep a proper lookout for persons in and along such highway, and especially said deceased child;" and "that she did not take proper notice of the presence of Paula Mundy on the west side of said highway immediately prior to said accident."

■ Pertinent to the charge of negligence, based upon the driving of the automobile in the extreme right-hand lane, is I.C. § 49–708, which in part provides:

"(b) Upon all roadways any vehicle proceeding at less than the normal speed of traffic at the time and place and under the conditions then exist-ing shall be driven in the right-hand lane then available for traffic, or as close as practicable to the right-hand curb or edge of the roadway, except when overtaking and passing another vehicle proceeding in the same direction or when preparing for a left turn at an intersection or into a private road or driveway."

It was plaintiffs' contention that if Mrs. Johnson had been driving in the lane next to the center of the highway she could have avoided the accident. She was driving at a speed of between 20 and 25 miles per hour in a 35 mile zone, and she testified that she was moving slower than normal traffic on that road. In such circumstances it was her duty to drive in the right-hand lane. The court did not instruct the jury as to the foregoing statu-

---

1. You are further instructed that it is ordinarily necessary to exercise greater care for the protection and safety of young children than for adult persons possessing normal and mature faculties. Their conduct is unpredictable and one operating a motor vehicle should anticipate their thoughtlessness and impulsiveness. The presence of children is in itself a warning requiring the exercise of care for their safety.

2. You are further instructed that it is a matter of common knowledge that children may at unexpected moments run upon or across the part of highways used for vehicles, and where the driver of a motor vehicle knows of the presence of a child or children in, near, or adjacent to the street or highway upon which she is traveling, or should know that children may reasonably be expected to be in such vicinity, such driver is under a duty to exercise care, commensurate with the emergencies presented. Motorists must be assumed to have knowledge of the use of such highways by children, and where their presence can be observed, a degree of care commensurate with the ordinary emergencies presented in these instances must be exercised. One driving a vehicle must not assume that children of immature years will exercise the care of their protection, and will not expose themselves to danger.

3. You are further instructed that it is the law that a person is presumed to see that which he could see by looking; further, it is the duty of the motorist to look not only straight ahead but laterally ahead and if his view is somewhat obstructed he is under a duty to look again and see that which is in plain sight.

tory duty, thus leaving this claim of negligence entirely to the judgment of the jury. This was favorable to the plaintiffs.

As to the third alleged act of negligence, the jury was properly advised by instruction no. 10,² of the driver's duty in that respect as required by I.C. § 49–735.

Instruction no. 9, assigned as error, sets forth the statutory duties of the drivers of motor vehicles and pedestrians at crosswalks. It is urged that the instruction is erroneous because "there were no crosswalks or pedestrian passageways in the Orchards at that time." The instruction contains one paragraph dealing with the duty of the pedestrian, where a pedestrian tunnel or overhead pedestrian crossing is provided, which was not applicable to this case. However, the instruction as a whole was applicable and not misleading. A crosswalk is defined by I.C. § 49–516, as existing at intersections where there are sidewalks, whether marked on the street surface or not, and there was a crosswalk a short distance beyond the point of the accident.

Complaint is made of the inclusion in instruction no. 10 of the phrase "Notwithstanding the foregoing provisions of this article." Other pertinent provisions of the statute were given, and the quoted phrase, though unnecessary, makes it clear that the driver's duty in the respect stated is not modified by any other provision.

Complaint is also made of instruction no. 19, stating the rule of care as affected by a sudden emergency, not created by the driver. Plaintiffs urge that Mrs. Johnson would not have been confronted by a sudden emergency if she had been driving in the left-hand lane. As we have stated, this was a question properly left to the jury.

Plaintiffs further assign as error the refusal of the court to give a number of requested instructions. We have examined these requests and find they were sufficiently covered by the instructions given.

By request no. 10, plaintiffs sought an instruction to the effect that when a driver knows of, or may reasonably expect, the presence of children adjacent to the street or highway, he must not drive at excessive speed and that he must have and maintain the vehicle under such control that he can, if necessary, bring such car to a stop before striking any such child or children. The accuracy of this request is

4. You are instructed that Section 49–735, Idaho Code, provides in part as follows: "Drivers to exercise due care.—Notwithstanding the foregoing provisions of this article, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child * * * upon a roadway."

questionable in view of the fact that **it** might be impossible for a driver to stop before striking a child which suddenly darts in front of his car from behind some obstruction, even though the driver was reasonably prudent and cautious in all respects. The point was sufficiently covered by instructions 12 and 13.

By request no. 19, the plaintiffs sought an instruction to the effect that a motorist may be held liable for injury to a child even though she did not see the child in time to avoid striking it. This request would require a modification to the effect that the failure to see the child in time to avoid striking it, was due to the driver's negligence. The point was covered.

■■ Plaintiffs requested an instruction submitting to the jury the presumption of due care on the part of the deceased child. We have held that an instruction on the presumption of due care is not proper where there are available witnesses to the facts and circumstances leading up to the accident and the actions of the injured party immediately prior thereto. In this case there was evidence as to the activities of the deceased child from the time she left the Bible school to the time she ran out in front of the car. Nothing is left to guess or speculation as to how the accident happened. In such circumstances we have held that an instruction on the presumption of due care is unnecessary. The rule impos-

ing the burden of proof upon the defendant to establish contributory negligence is in such cases an adequate protection to the rights of plaintiffs. Neff v. Hysen, 72 Idaho 470, 244 P.2d 146; Koch v. Elkins, 71 Idaho 50, 225 P.2d 457; Packard v. O'Neil, 45 Idaho 427, 262 P. 881, 56 A.L.R. 317.

■ The rulings of the court sustaining objections to two questions put to Mrs. Johnson by plaintiffs' counsel, are assigned as error. The first was:

"And you say now that you did anticipate that a child might come out from behind that parked car?"

The objection was that the question was argumentative and contrary to the witness' testimony. A prior question had been put and answered as follows:

"Q Now, as you approached this service station, didn't you anticipate that a child could run from behind that parked car?

"A As much as a person would normally around a service station, I believe, yes."

And the court ruled that she had answered. After some further examination the question was again put:

"The thing I am asking you now, Mrs. Johnson, is did you anticipate that a child might run out from behind that parked car at the service station?"

And again the court ruled that the question had been answered. We see no error.

Finally plaintiffs assign as error the action of the court in striking from the record testimony of the father of the child to the effect that Mr. Johnson had told the witness that the reason he had not come to see the Mundys immediately after the accident was that they, the Johnsons, had been advised by their insurance company not to; and the ruling of the court sustaining objection to plaintiffs' offer to prove that the adjuster for Johnsons' insurance company said to the witness that he would not allow Mrs. Johnson to talk to Mundy or his wife, and that Mr. Johnson had told him the same thing. The rulings were correct. Plaintiffs' contention that the offered evidence would rebut the testimony of Mrs. Johnson, to the effect that the reason she did not call upon the Mundys was that she was nervous and upset, and did not feel that she could talk to them, is without merit. The offered evidence was improper, and a witness may not be impeached on an immaterial and collateral issue. Hilbert v. Spokane International R. R. Co., 20 Idaho 54, 116 P. 1116; State v. Bush, 50 Idaho 166, 295 P. 432.

Judgment affirmed.

Costs to respondents.

SMITH, C. J., and KNUDSON, McQUADE and McFADDEN, JJ., concur.