644 P.2d 365

**STATE of Idaho, Plaintiff-Respondent,**

v.

**William O. BAKER, Defendant-Appellant.**

No. 13685.

Court of Appeals of Idaho.

April 13, 1982.

Gaylen L. Box, McDermott Law Offices, Pocatello, for defendant-appellant.

David H. Leroy, Atty. Gen., Lynn E. Thomas, Sol. Gen., Boise, for plaintiff-respondent.

BURNETT, Judge.

It was a shotgun blast in the early morning that killed Merardo Rodriguez. As he lay on the floor of his house, his wife placed a pillow beneath his head and watched him die. The wife's father, William Baker, stood a few feet away, in his night clothes, holding the shotgun. He leaned the gun against a wall, went upstairs to dress, and waited for the police to arrive.

From this tragic denouement of family conflict came a prosecution for first degree murder. Baker never denied the killing. He claimed that Rodriguez had been drunk, had threatened him, and that the gun was fired in self-defense. A jury found Baker guilty only of voluntary manslaughter. The district court sentenced him to the custody of the Board of Correction for an indeterminate term not exceeding six years. In this appeal, Baker contends that the jury was not adequately instructed on the law of self-defense, that the court's response to an inquiry from the jury was erroneous, and that the sentence was excessive. We affirm both the judgment of conviction and the sentence imposed.

Baker's contentions are framed by the facts developed at trial. Evidence was presented to show that Rodriguez had a reputation for being quarrelsome and dangerous when intoxicated. There was some testimony that Rodriguez had been unfaithful to his wife, had abused her, and recently had made a lewd sexual advance to one of her children by a prior marriage.

Baker, a retired serviceman, a devout member of his church, and a strong paternal influence within his family, had a low regard for Rodriguez. He had urged his daughter to get Rodriguez out of her life. She refused. She said she loved him.

Rodriguez and the daughter had a home in Rockland, Idaho. However, for several months prior to the shooting, Rodriguez had worked in Utah, seeing little of his wife at Rockland. The evening before the fatal confrontation, Baker and his family arrived at the Rockland home for an extended visit with the daughter. Baker brought two shotguns with him. He later explained that guns had always been an important part of his life, and he usually traveled with them. Baker loaded both firearms and placed them in the living room, near a cot where he would sleep. Everyone went to bed.

In the early morning, the daughter was awakened by the sound of a car stopping at the house. From a bedroom window she saw her husband walking toward the front door. As she ran downstairs, there was a loud knock. Baker jumped up and grabbed a gun. When the daughter opened the door, the confrontation began.

What happened next did not take long, and the testimony is conflicting. However, it appears that sharp words were exchanged. Baker, gun in hand, insisted that Rodriguez leave. Rodriguez, who had been drinking, answered that he did not have to leave his wife and home. Rodriguez and the daughter went to another room and attempted to reach the police by telephone, without success. Rodriguez then called his brother's house, a few miles away, told his sister-in-law there was trouble, and asked her to come get him. When he walked back to the living room, the acrimonious exchanges resumed. Rodriguez started to go out the front door; but, apparently in response to a comment by Baker, he turned back. He clenched his fists and said in effect, either that he would knock Baker's "block off," or that he would break Baker's neck. Baker later testified that he became afraid for his life; that Rodriguez, like "Richard Speck up in Chicago," might kill everyone in the house. Rodriguez stepped toward Baker. Baker pulled the trigger.

## I

We turn first to the court's instructions on self-defense. There were five instructions on the subject. The first was virtually identical to an instruction approved, although not quoted, by our Supreme Court in *State v. Griffiths*, 101 Idaho 163, 610 P.2d 522 (1980).[1] The Su-

---

1. *Instruction No. 25.* The Court instructs you, ladies and gentlemen, that homicide is justifiable and not unlawful when committed by a person in the lawful defense of himself, when he has reasonable ground to apprehend that he is in danger of death or great bodily injury and that there is imminent danger of such a design being accomplished.

In order to justify the taking of human life in self-defense, William O. Baker, as a reasonable person, must have had reason to believe and must have believed that he was in imminent danger of death or of great bodily injury. Further, the circumstances must be such that an ordinarily reasonable person, under similar circumstances, would believe that it was neces-

preme Court said the instruction was "not a model," but held that it was "not ambiguous, misleading or erroneous." 101 Idaho at 166, 610 P.2d at 525. Both sides in the instant case requested such an instruction, and the court correctly gave it.[2]

The court's second instruction, requested by Baker, recited the elements of justifiable homicide under I.C. § 18–4009. The third and fourth instructions, each requested by one of the parties, dealt with the extent of force that may be used in self-defense. The fifth instruction, proposed by Baker, informed the jury that they could consider the reputation of Rodriguez, for being quarrelsome and dangerous, in determining the reasonableness of Baker's conduct. None of these instructions is challenged on appeal.

However, Baker contends that the court's five instructions did not go far enough; that they failed to apprise the jury of Baker's right to rely on appearances in forming a belief that he was in imminent danger of harm from Rodriguez. We disagree. The first instruction, footnoted previously, states, in part:

> The danger must have been *apparent* and must have been present and must have been imminent, or must have so *appeared* at that time to a reasonable person.... [Emphasis supplied.]

This instruction explicitly acknowledged Baker's right to respond to an "apparent" danger, but the danger must have been one that would appear to a "reasonable person." The linkage between reasonableness and a right to act on appearances is indispensable. The right of self-defense in Idaho has long been grounded in the concept of the "reasonable" person. *E.g., State v. McGreevey*, 17 Idaho 453, 105 P. 1047 (1909).

Baker further contends that two of his proposed instructions, emphasizing the right to rely on appearances, should have been given. One of the instructions[3] drew

---

sary to use such force or means as might cause the death of his assailant, in his own defense, to avoid death or great bodily injury to himself.

A bare fear of death or great bodily injury is not sufficient to justify a homicide. To justify taking the life of another in self-defense, the circumstances must be such as to excite the fears of a reasonable person placed in a similar position, and the party committing the homicide must act under the influence of such fears alone. The danger must have been apparent and must have been present and must have been imminent, or must have so appeared at that time to a reasonable person, and the homicide must have been done under the well-founded belief that it was necessary to save the defendant from death or great bodily harm.

2. We do not yet have in Idaho pattern jury instructions for criminal cases. Prosecutors, defense counsel and trial judges take their bearings largely from appellate opinions. We agree with the Supreme Court that the instruction in *Griffiths*, while adequate, was not a model. It could be improved. Accordingly, we deem it appropriate to suggest, for consideration by the trial bench and bar, an instruction based upon *Griffiths*, with changes in structure and syntax:

> Homicide is justifiable if it is committed by a defendant lawfully defending himself. For self-defense to be lawful, the defendant must have believed that he was in imminent danger of death or great bodily injury, and that the use of deadly force was necessary to save himself from the danger. The circumstances must have been such that a reasonable person, under similar circumstances, would have had the same beliefs.
>
> The danger must have been present and imminent, or must have so appeared to a reasonable person under the circumstances. A bare fear of death, or of great bodily injury, is not sufficient to justify a homicide. The defendant must have acted under the influence only of fears that a reasonable person would have had in a similar position.

This suggested instruction, like the instruction approved in *Griffiths*, ordinarily would be used in conjunction with such other instructions on self-defense as the trial court might deem appropriate in a given case.

3. *Defendant's Requested Instruction No. 28.* Homicide is justifiable or committed in self-defense when committed in the lawful defense of such person when there is reasonable ground for said person to believe he is in imminent danger of great bodily injury.

The Court instructs you, as a matter of law, that a person need not be in actual, imminent peril of his life or of great bodily harm before he may assault his assailant; it is sufficient if, in good faith, he has a good and reasonable belief from the facts that they appear to him at the time that he is in such imminent peril.

A man does not have to wait until he sees whether he is going to be killed or not before attempting to protect himself when another is assailing him with all appearances of having

heavily upon *State v. Fondren*, 24 Idaho 663, 135 P. 265 (1913). This proposed instruction went beyond the language of an instruction given in *Fondren*, and included commentary from the *Fondren* opinion about self-defense in general. In our view, the proposed instruction, insofar as it followed the instruction given in *Fondren*, was covered by the court's first self-defense instruction in this case. Insofar as the proposed instruction contained commentary from *Fondren*, it would have added nothing as a matter of substantive law. It simply would have editorialized upon implications of the court's first instruction.

The other proposed instruction [4] was copied from an instruction quoted in *State v. Wilson*, 41 Idaho 616, 243 P. 359 (1925). However, the *Wilson* court did not pass upon the entire instruction; the court cited it only to show that the jury, in that case, had been informed:

> . . . that all that was necessary was that a reasonable and prudent man in similar circumstances should have believed it necessary to defend himself . . . . [41 Idaho at 635, 243 P. at 364.]

In our view, this proposed instruction—like the other proposed instruction urged by Baker—would have imparted no additional substantive information to the jury, but merely would have commented upon rules of law already stated.

Moreover, the commentary portions of both proposed instructions appear subtly to encourage the jury to focus upon a defendant's subjective fears. Such a focus would be contrary to the reasonableness requirement, set forth above, and recently re-emphasized by our Supreme Court. *See, e.g., State v. Rodriguez*, 93 Idaho 286, 291, 460 P.2d 711, 716–17 (1969); *State v. Scroggins*, 91 Idaho 847, 849, 433 P.2d 117, 119 (1967). We hold that the district court did not err by refusing to give these proposed instructions.

## II

Baker next contends that the court misled the jury in a response to an inquiry received during jury deliberations:

> THE COURT: Let the record show that we have received a note from the jury reading, and I quote, "For clarification only. In self-defense, do we consider all actions leading up to the act, or do we consider the immediate act itself?"
>
> The response which I'm submitting to the jury reads, and I quote, "You should consider the facts and circumstances from the time Merardo knocked on the door until the shooting."
>
> Do you agree, Mr. Beebe, that that should be the response?
>
> MR. BEEBE [prosecutor]: Yes, Your Honor.
>
> THE COURT: Mr. McDermott?

---

both a present intention and ability to either take his life or do him some great bodily injury. Men act in the ordinary affairs of life upon appearances and a man has a right to protect his person by acting upon the appearances, action and conduct of his adversary, the same as he would act upon like or similar appearances in any of the ordinary business affairs of life.

4. *Defendant's Requested Instruction No. 29.* You are further instructed that in deciding upon the guilt or innocence of defendant, you should determine what an ordinary and reasonable person might have fairly inferred from all the facts and circumstances by which the evidence shows the defendant was surrounded, at that time. You must not try the defendant in the light of subsequent evidence, nor must you require of the defendant the same cool judgment that you can now bring to bear upon the occurrence. You should put yourselves, as far

as possible, in the defendant's place, and then judge whether danger was apparent, or should have been considered apparent, by a person of ordinary caution and prudence in like condition.

The danger of [sic] life or great bodily harm, need not have been real, present or urgent at the very moment of the killing, but only apparently so. The question is, was the danger apparently so imminent and present at the time of the killing as a reasonable and prudent person, situated as the defendant was, would believe it was necessary to kill or inflict great bodily harm upon the deceased in order to avoid loss of his own life or to prevent great bodily harm being inflicted upon him. If, from all the evidence in the case, you believe that such was the case when the defendant killed the deceased, then you must find the defendant not guilty.

MR. McDERMOTT [defense counsel]: Yes, Your Honor.

Baker argues that the jury's inquiry showed confusion about the court's instructions on self-defense. We cannot agree. The jury did not ask the meaning of any instruction they had received. Rather, they inquired about the time frame of actions to be considered.

Baker next argues that, by limiting commencement of the time frame to when Rodriguez knocked on the door, the court excluded consideration of the victim's bad reputation. We note that defense counsel did not object to the court's language; rather, he approved it. In the absence of timely objection at trial, an assertion of error will not be examined on appeal. *E.g., State v. McCurdy,* 100 Idaho 683, 603 P.2d 1017 (1979).

A limited exception to this rule has been recognized where "fundamental error" deprives a defendant of due process. *E.g., State v. Haggard,* 94 Idaho 249, 486 P.2d 260 (1971). We see no denial of due process here. The court's response to the jury did not displace the written instructions, one of which specifically authorized the jury to consider the victim's reputation. Furthermore, the jury's inquiry was about "actions." Had the court told the jury to consider "actions" *before* Rodriguez knocked on the door, the jury's attention would have been drawn to prior conduct by Rodriguez toward his wife and her children. The prosecution, seeking a conviction of first degree murder, had contended that such conduct formed the basis of Baker's motive and premeditated intent to kill Rodriguez. Defense counsel's approval of the court's narrow response to the jury's inquiry was a sound tactical choice. It did not deprive Baker of due process.

### III

Baker argues that the sentence of an indeterminate period, not exceeding six years, was too harsh. Under I.C. § 18–4007(1), the sentence for voluntary manslaughter could have been as long as a fixed term of ten years. It does not appear that the state sought any enhancement of sentence under I.C. § 19–2520.

Sentencing is within the discretion of the trial court. If the sentence is within the limits prescribed by statute, it will not be disturbed unless the defendant affirmatively shows a clear abuse of discretion. *E.g., State v. Cotton,* 100 Idaho 573, 602 P.2d 71 (1979); *State v. Wolf,* 102 Idaho 789, 640 P.2d 1190 (Ct.App.1982).

Baker invites our attention to his age (now sixty years), declining physical condition, and lack of a prior criminal record. He submits that he presents no risk to society, and should have received a sentence of probation. The record indicates that the district court was aware of Baker's circumstances. But the court could not escape the fact that Baker intentionally had killed a fellow human being. When pronouncing sentence, the district judge indicated that probation would not "measure up . . . to the gravity of the offense" and that such a sentence "would be saying to the community that it is okay to take another's life."

Idaho Code § 19–2521 provides criteria for deciding whether to place a defendant on probation or to impose a sentence of imprisonment. The trial court is directed to consider "the nature and circumstances of the crime" as well as the "history, character and condition of the defendant . . . ." The court is authorized to impose a sentence of imprisonment if, among other reasons, "[a] lesser sentence will depreciate the seriousness of the defendant's crime" or imprisonment "will provide an appropriate deterrent for other persons in the community." In our view, the sentence imposed in this case was consistent with these criteria. We hold that there was no abuse of discretion.

The judgment of conviction and the sentence imposed by the district court are affirmed.

WALTERS, C. J., and SWANSTROM, J., concur.