730 P.2d 1030

**STATE of Idaho, Plaintiff-Respondent,**

v.

**James L. HOWARD, Defendant-Appellant.**

**No. 16334.**

Court of Appeals of Idaho.

Dec. 11, 1986.

Kent J. Merica, Knowlton & Miles, Lewiston, for defendant-appellant.

Jim Jones, Atty. Gen. by Lynn E. Thomas, Sol. Gen., and Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

BURNETT, Judge.

A jury convicted James Howard of forgery under I.C. § 18–3601. The district judge imposed a ten-year indeterminate sentence. On appeal, we are asked to decide the following issues: (1) Was extrinsic evidence erroneously admitted for the purpose of impeaching Howard's testimony on an immaterial point? (2) Was Howard denied his right to assistance of counsel, and to confrontation of witnesses, by reason of partial deafness which allegedly interfered with his ability to hear some of the testimony at trial? (3) Was the jury verdict supported by substantial evidence? (4) Was the ten-year indeterminate sentence excessive, constituting an abuse of the district judge's discretion? For reasons explained below, we affirm the judgment of conviction.

## I

Howard was accused of forging his name as payee on a presigned check taken from an elderly woman. At trial, he took the stand in his own defense. During cross-examination, and again on redirect, he commented that he was hard of hearing. His ability to hear was not a material issue as far as guilt or innocence of forgery was concerned. Nevertheless, the prosecutor elicited rebuttal testimony from several witnesses who said that Howard had no difficulty hearing. Howard's counsel did not object. On appeal, Howard contends for the first time that admission of the rebuttal testimony constituted reversible error.

A timely objection to this testimony might well have been sustained. In general, extrinsic evidence should not be admitted to impeach testimony on an immaterial point. *See Mundy v. Johnson*, 84 Idaho 438, 373 P.2d 755 (1962); G. BELL, HANDBOOK OF EVIDENCE FOR THE IDAHO LAWYER 43 (2d ed. 1972). Although such impeachment might cast some doubt upon the witness's memory or credibility, its value for this purpose usually is outweighed

by potential confusion of the jury, waste of time, and surprise to the party who offered the original testimony. *See* E. CLEARY, McCORMICK ON EVIDENCE § 47 (3d ed. 1984). However, in this case, the fact remains that no objection was made.

■ We will not examine a question raised for the first time in a criminal appeal unless it is shown that "fundamental error" deprived the defendant of due process. *State v. Haggard*, 94 Idaho 249, 486 P.2d 260 (1971); *State v. Baker*, 103 Idaho 43, 644 P.2d 365 (Ct.App.1982). We deem it apparent that no such "fundamental error" occurred here. As indicated above, impeachment on an immaterial point ordinarily is disallowed precisely because it has little value. We are unpersuaded that the evidence in this case concerning deafness, or lack of it, so profoundly affected the trial as to deny Howard due process.

## II

Howard's alleged hearing impairment also arose in another context. After the judgment of conviction—including the sentence—had been entered, Howard moved for a new trial. He asserted that his partial deafness had prevented him from following all of the trial proceedings and had made it impossible to confront witnesses or to assist counsel in the presentation of his defense. The judge prudently conducted an evidentiary hearing on the motion. Howard testified that he had heard only "a little" of the trial. He further stated that his hearing aid had been misplaced. At the conclusion of the testimony, the judge ruled:

> I have no reason to believe that the defendant suffers from any serious hearing problem. We've communicated in addition to this in the courtroom. He has not indicated to me that he couldn't hear or understand me.
>
> I've talked quite a little bit to him. I observed him during the trial. He was attentive to the witnesses. I have no reason to believe that he has a hearing impairment to an extent that would affect the outcome of this trial.

Certainly he did not make it known in any way prior to the trial so that something could have been done to assist him, if, in truth, there was a serious hearing problem. So, the motion for new trial is denied.

The cold record on appeal affords a scant basis to second guess the factual content of the judge's ruling. The judge was on the scene. We were not. In any event, the transcript discloses that while Howard was testifying, he asked on several occasions for questions to be repeated. However, he was able to respond to the questions. He also responded to questions involving recall of earlier testimony by prosecution witnesses. In addition, he stated that he owned a hearing aid but did not always wear it.

■ If a criminal defendant is handicapped by a hearing impairment, the trial judge should provide whatever assistance is reasonably necessary to enhance the defendant's ability to hear the testimony and to assist his attorney in formulating effective cross-examination. *See generally* Annotation, *Criminal Trial of Deaf, Mute or Blind Person*, 80 A.L.R.2d 1084 (1961). But trial judges are not omniscient. A defendant's disability, if not obvious, must be timely communicated to the court. Howard did not mention any difficulty hearing the testimony at trial until the government's case-in-chief had been concluded. Even then, he did not ask for a declaration of mistrial. Indeed, at no point during the trial did Howard or his counsel request the court to provide a hearing aid or to continue the trial so that Howard could obtain one. In light of these circumstances, and deferring to the judge's on-site observations, we conclude that Howard's rights to confront witnesses and to receive effective assistance of counsel were not impermissibly abridged. The court did not err in denying the motion for a new trial.

## III

■ Howard next contends that the state's evidence was insufficient to support

a conviction for forgery. A judgment of conviction, entered upon a jury verdict, will not be set aside when there is substantial evidence upon which rational triers of fact could have found the essential elements of the crime beyond a reasonable doubt. *E.g., State v. Vega,* 110 Idaho 685, 718 P.2d 598 (Ct.App.1986). We will not substitute our judgment for that of the jury regarding the credibility of the witnesses, the weight of the testimony, or the reasonable inferences drawn from the evidence. *Id.*

As noted above, Howard was charged with forging his name as payee on a pre-signed check taken from an elderly woman. Howard never denied that he obtained the check in question. Indeed, he admitted cashing it. His defense was that he sold the victim a Chinese vase, represented to be from the Ming dynasty, for $4,286.00. He testified that he completed the pre-signed check by inserting his name, the date and the amount at her direction. However, the victim testified differently. She said that she was approached by Howard one evening while she was sitting in the lounge of a social club. Because she suffered from a neurological disorder, she communicated her name to Howard by displaying a deposit slip from her checkbook. The checkbook contained the presigned check. She later left her purse on a table in the lounge while she went to the restroom. At the end of the evening, she noticed that the presigned check was missing. Several days later, her bank notified her of an overdraft on the checking account.

Howard now argues, as he did at trial, that the victim's testimony was successfully impeached. On cross-examination, defense counsel presented the victim's prior testimony at the preliminary hearing, expressing uncertainty as to whether she had left her purse on the table at the lounge. Howard urges that the prosecution failed to prove that he took the check without the victim's consent. But the victim's credibility and the weight of her testimony were for the jury to determine. Moreover, the forgery consisted not of taking the pre-signed check but of completing it without authority. The victim and her son, a co-sig-ner on the checking account, vehemently asserted that Howard never had been authorized to make any check payable to himself, much less a check for $4,286.00. The jury, forced to choose between two conflicting versions of events, was entitled to accept the victim's testimony. We conclude that the verdict was supported by substantial evidence upon which rational triers of fact could find that forgery had been proven beyond a reasonable doubt.

## IV

We now turn to the ten-year indeterminate sentence imposed for the offense. Howard asserts that the sentence was excessive. The maximum statutory penalty for forgery is imprisonment for fourteen years. I.C. § 18–3604. Where, as here, a sentence is within statutory limits, it will not be disturbed unless an abuse of discretion is shown. Our criteria for determining the length of confinement under an indeterminate sentence, and for evaluating the reasonableness of such confinement in a particular case, are fully set forth in *State v. Toohill,* 103 Idaho 565, 650 P.2d 707 (Ct.App.1982). They need not be reiterated. It suffices to say that for the purpose of appellate review, the length of confinement in this case is deemed to be three and one-third years. The question presented is whether confinement of such duration is necessary to protect society or to achieve any of the related goals of retribution, deterrence or rehabilitation.

The forgery was a serious, albeit nonviolent, offense. Howard took advantage of an elderly, disabled victim. The amount of money involved was substantial. Although Howard, when apprehended, returned most of the money, his partial restitution was in no genuine sense a voluntary act. Howard's character also weighed against him. A record check revealed that he had been convicted of at least four prior felonies, including forgery. He also had been convicted of numerous lesser offenses against persons and property. Although Howard was seventy-one years old at the time of sentencing, and was suffering from various

**114**

health problems, neither his age nor his ailments had altered his pattern of antisocial behavior. He had spent time in prison as recently as 1983 and had been released on parole.

The district judge summarized his impression as follows:

> Mr. Howard, this is not a case, proper case for any kind of a probation. Probations, paroles, particularly paroles have been involved in your past and they have not deterred you. Close scrutiny, close supervision apparently has not had much affect [sic] upon your contacts with the violations.
>
> The duty of the Court is to give society as much protection as possible for its safety; that is, the safety of persons and the safety of their property. Your crimes have, in the past, have been both crimes against persons and crimes against property.
>
> I'm well aware of your age. I'm well aware of your infirmities. But this is a serious matter and I must consider it a serious matter and deal with it appropriately.

The judge's impression is well supported by the record. A substantial prison sentence, intended to protect society from a persistent pattern of criminal behavior, is consistent with the standards enunciated in *State v. Toohill, supra.* We cannot say that confinement for three and one-third years is excessive in relation to the manifest need to protect society in this unfortunate case. The sentence, although strict, was not an abuse of discretion.

The judgment of conviction, including the sentence imposed, is affirmed.

WALTERS, C.J., and SWANSTROM, J., concur.